### UNITED STATES v. JOHNSTON et al.

(District Court, N. D. New York. May 23, 1916.)

1. COMMERCE ⊜82—UNLAWFUL IMPORTATION—INDICTMENT.

Act July 31, 1912, c. 263, § 1, 37 Stat. 240 (Comp. St. 1913, § 10416), declares that it shall be unlawful for any person to deposit in the mails or with any carrier, or to ·send or carry from one state or territory to another state or territory, or to bring or cause to be brought into the United States from abroad, any films or any pictorial representations of any prize fight, which are designed to be used or may be used for the purpose of public exhibition. An indictment averred that defendants did bring, and cause to be brought, into the Northern district of the state of New York, films and pictorial representations of a prize fight, which were designed to be used, and which might be and were used, for public exhibition by setting up and causing to be set up and operate a camera and moving picture machine and apparatus on the international boundary line between the United States and Canada, so that a part of the machine and apparatus were within the United States and the remaining portion of the machine and apparatus in Canada, and that from films and pictorial representations placed in the machine on the Canadian side through the mechanical operation of the machine and apparatus, and by means in use of air, sunlight, electric light, and otherwise, were caused to be brought into the United States for the purpose of public exhibition, contrary to the statute made and provided. *Held* that, as the indictment specifically affirmed that parts of the machine were in the United States, and by means of air, electricity, and sunlight, pictorial representations were brought into the United States, it charged a violation of the statute and a demurrer cannot be sustained on the theory that defendants were merely projecting pictures into the United States from a machine located in Canada.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 47; Dec. Dig. ⊜82.]

2. CONSPIRACY ⊜43(6)—INDICTMENT—CONSPIRACY TO COMMIT CRIME.

In such case, the indictment, charging that defendants conspired together in violation of Criminal Code (Act March 4, 1909, c. 321) § 37, 35 Stat. 1096 (Comp. St. 1913, § 10202), to violate Act July 31, 1912, c. 263, § 1, and pursuant to such violation committed the acts above charged, was ·sufficient to charge the offense of conspiring to commit an offense against the laws of the United States.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 86, 91; Dec. Dig. ⊜43(6).]

3. COMMERCE ⊜31—INTERSTATE COMMERCE—REGULATIONS OF.

Under its power to regulate interstate commerce, Congress may forbid the transportation from state to state, or from foreign countries into the United States, of articles or pictures tending to debase the public; and therefore, in view of the brutalizing nature of prize fights, Act July 31, 1912, c. 263, § 1, forbidding the introduction into the United States of films ·showing prize fights, or the transportation of such films from state to state, is constitutional.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 24; Dec. Dig. ⊜31.]

4. COMMERCE ⊜55—INTERSTATE COMMERCE—REGULATIONS OF.

Nor is such act invalid because it partakes of the quality of a police regulation.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. §§ 72–102; Dec. Dig ⊜55.]

---

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

At Law. James J. Johnston and others were indicted for crime. On demurrer to the indictment by all defendants, except James J. Orkeny. Demurrer overruled.

D. B. Lucey, U. S. Atty., of Ogdensburg, N. Y.

George Gordon Battle, of New York City (D. F. Costello, of Syracuse, N. Y., of counsel), for defendants.

RAY, District Judge. On the grounds "that the said indictment does not state facts sufficient to constitute a crime under any statute of the United States, and upon the further ground that it appears upon the face of the indictment that the matters charged against the said defendants do not constitute a crime under any statute of the United States," and "that Congress has not constitutional power to prohibit the taking within the United States of pictures of objects beyond the border of the United States, as alleged in the said indictment, and that the statute defining the substantive offense charged in this indictment, in so far as it prohibits the acts therein described, is unconstitutional and void," the defendants, except defendant Orkeny, who has not been apprehended, demur to an indictment found and filed April 7, 1916, charging them, first, with having conspired to commit an offense against the United States in violation of section 37 of the Criminal Code of the United States, by agreeing to violate section 1 of the Act of July 31, 1912, c. 263 (37 Stat. 240, 4 U. S. Comp. St. 1913, § 10416), being an "act to prohibit the importation and the interstate transportation of films, or other pictorial representations of prize fights, and for other purposes," and, second, with having actually violated that provision of the criminal laws of the United States. That section reads as follows:

"It shall be unlawful for any person to deposit or cause to be deposited in the United States mails for mailing or delivery, or to deposit or cause to be deposited with any express company or other common carrier for carriage, or to send or carry from one state or territory of the United States or the District of Columbia to any other state or territory of the United States or the District of Columbia, or to bring or to cause to be brought into the United States from abroad, any film or other pictorial representation of any prize fight or encounter of pugilists, under whatever name, which is designed to be used or may be used for purposes of public exhibition."

[1] The indictment charges in count 1 that the defendants, naming them:

"In violation of the provisions of section 37 of the Criminal Code of the United States of America, did on and previous to the 2d day of April, 1916, unlawfully, knowingly and feloniously conspire, combine and confederate together among themselves to commit an offense against the United States of America, that is to say, to violate the provisions of section 1 of the act of Congress approved July 31, 1912, and known as an act to prohibit the importation and the interstate transportation of films or other pictorial representations of prize fights and for other purposes, in the manner following; that is to say: That the said James J. Johnston, Lawrence M. D. McGuire, Harold T. Edwards, Isaac W. Ullman, Harry A. Fishbeck, W. V. Brymer, and James J. Orkeny, should and would bring and cause to be brought into the United States of America, films and other pictorial representations of a prize fight, designed to be used and which might be used for the purposes of public exhibition, to wit, the Johnson-Willard prize fight, held at Havana, Cuba, April

15. 1915, by setting up and operating a camera and motion picture machine or machines and apparatus upon the international boundary between the United States of America and the Dominion of Canada, in the town of Champlain, county of Clinton and state of New York, and within the jurisdiction of this court, and the parish of Lacolle, province of Quebec, Dominion of Canada, and about one mile north of Rouses Point, New York, and containing a film and pictorial representation of a prize fight, the prize fight aforesaid; that a portion of said camera and apparatus and machine would and should be placed in the Dominion of Canada, and the other portion thereof in the United States of America at ·the aforesaid place, through and by means of which said camera, machine and apparatus said pictorial representations of the aforesaid prize fight were to be brought and caused to be brought into the United States of America by means of the mechanical operation of said camera machine apparatus and the action of the atmosphere, sunlight and electric light transferring same and bringing from picture films of the said prize fight, placed and operated in the portion of said machine which would then be in the Dominion of Canada, to the said camera placed upon the American side, for the purpose of bringing the said pictures and pictorial representations into the United States of America, intending and designing such pictorial representations of such prize fight to be used and which might be used for the purposes of public exhibition in the United States and elsewhere.

"That in pursuance to the said conspiracy and during the continuance thereof, and in execution, and to effect the object of the same, the said James· J. Johnston, Lawrence M. D. McGuire, Harold T. Edwards, Isaac W. Ullman, Harry A. Fishbeck, W. V. Brymer, and James J. Orkeny did on or about the said 2d day of April, 1916, in the Northern district of New York and within the jurisdiction of this court, unlawfully, knowingly and feloniously set up a camera motion picture machine and other apparatus upon the said international boundary line between the United States of America and the Dominion of Canada, about one mile north of Rouses Point, New York, in the Northern district of New York, for the purpose of bringing and causing to be brought into the United States, from abroad, films and other pictorial representations of a prize fight, to wit, the Johnson-Willard prize fight, held at Havana, Cuba, April 15, 1915, intended to be used, designed to be used and which might be used for the purposes of public exhibition in the United States and elsewhere; that a part of said machine, namely, the camera and other apparatus was placed in the town of Champlain, Clinton county, in the state of New York, in the district aforesaid, and the other part thereof, containing films of and containing pictures of said fight and other apparatus was placed about one foot distant therefrom in the parish of Lacolle, province of Quebec, Dominion of Canada, and that said machine, camera and apparatus were controlled and operated on said date through means of a crank, chain, storage battery, electric lights, sunlight, air and other mechanical devices set in motion, propelled and operated by the said persons, to wit, James J. Johnston, Lawrence M. D. McGuire, Harold T. Edwards, Isaac W. Ullman, Harry A. Fishbeck, W. V. Brymer, and James J. Orkeny in both the United States and the Dominion of Canada, and that on account of and by means of the operation thereof on said date, pictures, pictorial representations and films of said prize fight were brought and caused to be brought from the Canadian side or portion of said machine and apparatus in the Dominion of Canada, into the camera and apparatus on the American side of the same, thereby bringing and causing to be brought into the United States, from abroad and from the Dominion of Canada, films and other pictorial representations of said prize fight which were intended and designed to be used and which might be used for the purpose of public exhibition in the United States and elsewhere, by means of the mechanical operation of the aforesaid machine, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the United States of America."

Count 2 charges that the defendants did on the 2d day of April, 1916:

"In the Northern district aforesaid and within the jurisdiction of this court, unlawfully, knowingly and feloniously bring and cause to be brought into the

United States of America, and into the county of Clinton in the state of New York, in the Northern district of said state of New York, films and other pictorial representations of a prize fight, to wit, the Johnson-Willard prize fight, held at Havana, Cuba, April 15, 1915, and which were then and there designed to be used, and were so brought in to be used, and which might be used for the purposes of public exhibition in the United States and elsewhere in the following manner: By setting up and causing to be set up and operated a camera and moving picture machine and apparatus upon the international boundary line between the United States and Canada, about one mile north of Rouses Point, New York. That a part of said machine and apparatus, viz., the camera portion thereof and other apparatus was placed within the United States, to wit, in the town of Champlain, Clinton county, state of New York, Northern district of New York, and within the jurisdiction of this court, and the remaining portion of said machine or machines and apparatus connected and operated together was placed in the parish of Lacolle, province of Quebec, Dominion of Canada, which said camera and machine and apparatus were then and there operated by means of mechanical devices set in motion by James J. Johnston, Lawrence M. D. McGuire, Harold T. Edwards, Isaac W. Ullman, Harry A. Fishbeck, W. V. Brymer, and James J. Orkeny, and on account of and by means of the operation thereof, films and other pictorial representations of said prize fight were taken from the films of said prize fight placed in said machine on the Canadian side thereof, and through the mechanical operation of said machine and apparatus and camera transmitted to the American side, which said mechanical operation was set in motion and propelled by the aforesaid persons, and by such means and by the use of air, sunlight, electric light and otherwise, said films and pictorial representations of the aforesaid prize fight were then and there brought and caused to be brought into the United States from the Dominion of Canada for use, and by said persons were designed to be used and which might be used, for the purpose of public exhibition of the same and of said prize fight and encounter of pugilists in the United States and elsewhere, contrary to the form of the statute in such cases made and provided and against the peace and dignity of the United States of America."

The third count is substantially the same as count 2, except it charges that the offense was committed April 3, 1916.

The main contention of the defendants is that this indictment shows on its face that no film, or physical picture, or physical pictorial representation of a prize fight was actually brought into the United States from the Dominion of Canada, but that by an ingenious arrangement of apparatus, camera, film, etc., a picture of a prize fight was photographed on the United States side of the natural boundary from a film located on the Canadian side, and that such process and operation, even if the moving picture of the prize fight was reproduced on the United States side of the border line between the United States and Canada, does not constitute a bringing or a causing to be brought into the United States from abroad—that is, from Canada—of either a film or other pictorial representation of any prize fight, etc., within the meaning of the section quoted. The main weakness in this argument is that it assumes the indictment does not mean what it says when it charges in plain and unmistakable language that defendants—

"did on the 2d day of April, 1916, * * * bring and cause to be brought into the United States of America * * * films and other pictorial representations of a prize fight, to wit, the Johnson-Willard prize fight," etc.

Here is a plain charge of bringing in films and other pictorial representations of such prize fight. Then follows a description of

the mode and manner in which such physical objects, films, and other pictorial representations of such prize fight were actually brought into the United States. The indictment does not state and charge that a photograph was taken on the United States side of the international line of a film or picture of a prize fight located on the Canadian side, but, after describing to an extent an apparatus, etc., says:

> "And on account of and by means of the operation thereof [such apparatus, etc.], films and other pictorial representations of said prize fight were taken from the films of said prize fight placed in said machine on the Canadian side thereof, and through the mechanical operation of said machine and apparatus and camera transmitted to the American side"

—that is, brought over and carried or forwarded to the American side. But, further, the indictment says:

> "Which said mechanical operation was set in motion and propelled by the aforesaid persons [the defendants], and by such means [mechanism] and by the use of air, sunlight, electric light and otherwise said films and pictorial representations of the aforesaid prize fight were then and there brought and caused to be brought into the United States from the Dominion of Canada for use," etc.

Even if the indictment charges that "films and pictorial representations of said prize fight" were reproduced on the Canadian side from the films placed there, in plain and unequivocal language it further says that by the means and mechanism described and other means "said films and pictorial representations" were then and there brought and caused to be brought into the United States, etc. This court cannot be informed just what the evidence will show, and that is not the question here. It may appear from the evidence that no film or pictorial representation was brought into the United States, but the indictment plainly alleges that one or more films and one or more pictorial representations of the prize fight named were brought into the United States, and into the Northern district of New York, and that same were designed to be used and could be used and might be used for purposes of public exhibition. It would be a waste of time to consider a case which argument states the evidence will show. It will be time enough to consider that when the evidence is before the court. It is clear that no conviction can be had if the evidence fails to show the bringing in from abroad of a film or a pictorial representation of a prize fight.

[2] The conspiracy count plainly charges a conspiracy to commit a crime against the United States, and as plainly charges the commission of an overt act in execution of such conspiracy. The other counts charge the defendants with having actually brought into the United States from the Dominion of Canada, not only a film, but other pictorial representation of a prize fight, naming it, and that such film and pictorial representation was capable of being used and designed to be used and might be used for purposes of public exhibition. The times when and the place where these offenses were committed are plainly and clearly specified, and the defendants are also informed so far as possible as to the means claimed to have been used by them in bringing in such films and other pictorial representations of a prize fight.

These means, this apparatus and its workings, may have been a new mode of bringing in or transmitting films and other pictorial representations of this prize fight from Canada to the United States; but this is immaterial, provided the use and operation of the means employed did bring from the Dominion of Canada into the United States films and other pictorial representations of the prize fight which were intended to be used and which could be used for purposes of public exhibition in the United States. The indictment charges that this was actually done by the operation by defendants of the instrumentalities actually employed. No court has the right to assume, or presume, or guess, or speculate, or theorize that this could not be done by the use of such means. The indictment says it was done.

## Constitutionality of the Law.

[3] The control of the importation of articles into the United States and of their transportation from state to state is within the constitutional power of Congress. It and it alone regulates interstate and foreign commerce. It has the right to say what aliens, and under what conditions such aliens, may come into the United States, and also what articles of use and commerce may come into the United States, or go from state to state. It has the right to prohibit the bringing into the United States of articles which it deems injurious to the morals and general welfare of the people of the United States, or their transportation from state to state. In Hoke v. United States, 227 U. S. 308, 322, 33 Sup. Ct. 281, 284 (57 L. Ed. 523, 43 L. R. A. [N. S.] 906, Ann. Cas. 1913E, 905), the constitutionality of the so-called "White Slave Act" (Comp. St. 1913, §§ 8812–8819) was under consideration, and Mr. Justice McKenna, in giving the opinion of the court, said:

"Our dual form of government has its perplexities, state and nation having different spheres of jurisdiction, as we have said; but it must be kept in mind that we are one people, and the powers reserved to the states and those conferred on the nation are adapted to be exercised, whether independently or concurrently, to promote the general welfare, material and moral. This is the effect of the decisions, and surely, if the facility of interstate transportation can be taken away from the demoralization of lotteries, the debasement of obscene literature, the contagion of diseased cattle or persons, the impurity of food and drugs, the like facility can be taken away from the systematic enticement to and the enslavement in prostitution and debauchery of women, and, more insistently, of girls."

The brutalizing and pernicious effect, especially on the young, of looking on physical encounters between human beings in the shape of actual fights, where the fight is "to the finish" and until the one or the other of the combatants is "knocked out" and rendered physically incapable of further action, offensive or defensive, are well known and recognized almost everywhere. In these days of "movies," or moving picture shows, it was seen that, while it was impossible for such brutal scenes to be enacted within the United States, because of state laws prohibiting them, still moving film pictures of the actual fight taking place outside the United States, showing it in all its harrowing details, might be taken and developed and brought into the United States, and the fight there reproduced in the so-called "moving picture shows"

as one of the attractions of the "movies." Therefore Congress, remembering that "the powers reserved to the states and those conferred on the nation are adapted to be exercised, whether independently or concurrently, to promote the general welfare, material and moral," saw fit to absolutely prohibit the bringing into the United States of any film or other pictorial representation of one of these prize fights which had taken place in some other country, and which might be used for purposes of public exhibition. Congress has determined by this legislation that, in enacting it, it was promoting the "general welfare, material and moral."

[4] Congress has closed our doors against the importation of lewd and indecent pictures, the exhibition of which has a tendency to debase, degrade, and demoralize, and it has placed its ban on the importation of pictures showing a brutal prize fight capable of public exhibition. I do not think any court will have the temerity to hold that by so doing Congress has trenched on the rights and liberties of the people. In Hipolite Egg Co. v. United States, 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364, the Supreme Court denominated adulterated drugs and foods as "outlaws of commerce," and said that their confiscation by law was appropriate to the right to bar them from interstate transportation, and completed the purpose of the law by not merely preventing their physical movement, but preventing trade in them between the states. The constitutional power of Congress over commerce extends, not only to interstate, but to foreign commerce, and what it may do with respect to the one it may do with respect to the other. It is no objection that these laws have the quality of police regulations, for, while the police power abides with the several states, still "Congress may adopt not only the necessary but the convenient means necessary to exercise its power over a subject completely within its power, and such means may have the quality of police regulations." Hoke v. United States, 227 U. S. 308, 33 Sup. Ct. 281, 57 L. Ed. 523, 43 L. R. A. (N. S.) 906, Ann. Cas. 1913E, 905; Gloucester Ferry Co. v. Pennsylvania, 114 U. S. 196, 5 Sup. Ct. 826, 29 L. Ed. 158.

Congress has provided for the rejection of the diseased and immoral, and this legislation has the quality of police regulation. There is no inherent right in the enjoyment of liberty under our Constitution to do wrong, or to possess here or bring into the United States from other countries, articles, such as pictures, which, if exhibited, only tend to debase and degrade the beholder and lower the moral standard of our people. The general policy of nearly all, if not all, the states of the Union, is shown by the several laws prohibiting prize fights within their borders. So each state might prohibit the exhibition, or having in possession, of a pictorial representation of a prize fight or of a film which would reproduce one. This is for the states, but Congress can aid by prohibiting the bringing from any other country into any state or territory of the United States, or the District of Columbia, any pictorial representation of a prize fight which took place abroad, or any film calculated to reproduce same, and which, it is well known, may be done with nearly the same vividness as though the actual fight was going on before the eyes of the beholder. Weak and puny, indeed,

would that government be which is powerless to prohibit by the enactment and enforcement of appropriate laws the importation of articles which, when exhibited or put to use, degrade its people, or lower the standard of the morals of its people. Congress has not undertaken to say that such films and pictorial representations of a prize fight shall not be exhibited within a state, leaving that to the state itself; but it has said, acting under and by virtue of its constitutional right to absolutely control and regulate interstate and foreign commerce, that such films and pictorial representations shall not be brought or caused to be brought into the United States from abroad, or carried from state to state through or by means of the mails or otherwise.

But it is useless to discuss this question further, as the constitutionality of the act has been upheld by the Supreme Court of the United States in Weber v. Freed, Collector, etc., 239 U. S. 325, 36 Sup. Ct. 131, 60 L. Ed. ——, decided December 13, 1915, where the court, by Mr. Chief Justice White, said:

"The ground relied on for the relief was the averment that the prohibition of the act of Congress in question was repugnant to the Constitution because, in enacting the same, 'Congress exceeded its designated powers under the Constitution of the United States, and attempted, under the guise of its powers under the commerce clause, to exercise police power expressly reserved in the states.' The collector moved to dismiss on the ground that the bill stated no cause of action, because the assailed provision of the act of Congress was constitutional, and therefore on the face of the bill there was no jurisdiction to award the relief sought. The motion was sustained and a decree of dismissal was rendered, and it is this decree which it is sought to reverse by the appeal which is before us; the propositions relied upon to accomplish that result but reiterating in various forms of statement the contention as to the repugnancy to the Constitution of the provision of the act of Congress. But in view of the complete power of Congress over foreign commerce, and its authority to prohibit the introduction of foreign articles recognized and enforced by many previous decisions of this court, the contentions are so devoid of merit as to cause them to be frivolous. Buttfield v. Stranahan, 192 U. S. 470 [24 Sup. Ct. 349, 48 L. Ed. 525]; The Abby Dodge, 223 U. S. 166, 176 [32 Sup. Ct. 310, 56 L. Ed. 390]; Brolan v. United States, 236 U. S. 216 [35 Sup. Ct. 285, 59 L. Ed. 544]. It is true that it is sought to take this case out of the long-recognized rule by the proposition that it has no application because the assailed provision was enacted to regulate the exhibition of photographic films of prize fights in the United States, and hence it must be treated, not as prohibiting the introduction of the films, but as forbidding the public exhibition of the films after they are brought in—a subject to which, it is insisted, the power of Congress does not extend. But, aside from the fictitious assumption on which the proposition is based, it is obviously only another form of denying the power of Congress to prohibit, since, if the imaginary premise and proposition based on it were acceded to, the contention would inevitably result in denying the power in Congress to prohibit importation as to every article which, after importation, would be subject to any use whatever. Moreover, the proposition plainly is wanting in merit, since it rests upon the erroneous assumption that the motive of Congress in exerting its plenary power may be taken into view for the purpose of refusing to give effect to such power when exercised. Doyle v. Continental Ins. Co., 94 U. S. 535, 541 [24 L. Ed. 148]; McCray v. United States, 195 U. S. 27, 53–59 [24 Sup. Ct. 769, 49 L. Ed. 78, 1 Ann. Cas. 561]; Calder v. Michigan, 218 U. S. 591, 598 [31 Sup. Ct. 122, 54 L. Ed. 1163]."

It is claimed that this indictment shows on its face that all that was done was to photograph from the United States side of the national boundary line a film picture of a prize fight, which film so

photographed was located on the Canadian side of the said boundary line, and that as the film photograph so taken would have to be developed in order to be of use, and this is not alleged to have been done, no offense is charged. But this is not the allegation of the indictment, as we have seen. The making and existence of a film or pictorial representation of this prize fight on the Canadian side is plainly and specifically alleged, as is the bringing and transmission of same into the United States in a form intended for exhibition and which could be exhibited in the United States. If by some physical mechanical means, combined with the use of air, natural light and electric light and other means, a pictorial representation of the prize fight or pugilistic encounter which had taken place in Cuba was brought into the United States from Canada for public exhibition here, and it was of such a character it could or might be publicly exhibited in the United States, it is difficult to understand why the statute was not offended against. On the trial it will be incumbent on the United States to prove that substantially by the means referred to a film or other pictorial representation of such prize fight of the character required by the statute was brought into the United States from Canada through the action or procurement of the defendants or of some of them. We are not now concerned with the sufficiency of the testimony or proofs that will be adduced on the trial, but with the sufficiency of the allegations of the indictment. Each count of this indictment plainly and in unambiguous terms and words gives notice to these defendants of the ultimate facts to be proved, and is so specific and definite as to give no opportunity for a second prosecution for the offense charged. The averments of the indictment and of each count embrace and charge each and every element of the offense defined in the last clause of the Act of July 31, 1912, c. 263 (37 Stat. 240), and must be held sufficient. Cochran v. United States, 157 U. S. 286, 290, 15 Sup. Ct. 628, 39 L. Ed. 704; Rosen v. United States, 161 U. S. 29, 34, 16 Sup. Ct. 434, 480, 40 L. Ed. 606; Markham v. United States, 160 U. S. 319, 323, 16 Sup. Ct. 288, 40 L. Ed. 441.

The demurrers are overruled.