### ROSE et al. v. ST. CLAIR.

District Court, W. D. Virginia, at Lynchburg.
September 18, 1928.

Harry Baumgardner, of Lynchburg, Va., for petitioner.

T. X. Parsons, Asst. U. S. Atty., of Roanoke, Va., for respondent.

McDOWELL, District Judge. On the afternoon of April 21, 1928, H. A. Rose, acting in conjunction with the local post of the American Legion, had given an exhibition at a theater in Lynchburg, Va., of the films of the Tunney-Dempsey prize fight. Another exhibition of the films was advertised for the evening of that day. Immediately after the first exhibition, the films were seized by a deputy marshal of this district under a search warrant issued by the local United States commissioner. No warrant for the arrest of Rose, or of any one, was issued or asked for. By agreement of counsel the validity of the seizure was informally submitted to me on an oral motion to require the restoration of the films by the deputy marshal. After very

brief consideration, I expressed a belief that the seizure was unjustified, and the films were forthwith returned to Rose.

As it seems that federal seizures are now being made of the films of the Tunney-Heeney prize fight, the questions involved in the motion above mentioned are given an interest which they otherwise would not have. The affidavit for the search warrant, made by a special agent of the Department of Justice, is as follows:

"United States of America, Western District of Virginia, Lynchburg Division.

"Affidavit for Search Warrant.

"Be it remembered, that on this day, before me, the undersigned, a United States commissioner for the Western district of Virginia, Lynchburg division, came M. A. Joyce, agent of the Department of Justice, who, being by me duly sworn, deposes and says that he has reason to believe and does believe that within a certain building, commonly known and referred to as the City Auditorium, on Main street, in the city of Lynchburg, Virginia, in the Western district of Virginia, in a portion of said building used by H. A. Rose for theater or show purposes, and their offices and rooms connected with their theater or show, and which said theater is owned by Keystone Realty Company, and H. A. Rose is the lessee thereof, there is located certain property, to wit, certain films and other pictorial representations of a prize fight designed to be used, and which is being used, and which might be used, for the purpose of public exhibition, to wit, the Tunney-Dempsey prize fight, held in Chicago, in the state of Illinois, on the 22d day of September, 1927, which are being used as a means of committing a felony, to wit, a violation of section 37 of the Criminal Code of the United States; that the facts to establish the grounds of probable cause are as follows: That the owner of said theaters and said H. A. Rose, lessee thereof, and divers other persons whose names are unknown, did on and previously to the 21st day of April, 1928, unlawfully, knowingly, and feloniously conspire, combine, and confederate, each with the other, among themselves, to commit an offense against the United States, to wit, to violate the provision of title 18, section 405, of the United States Code Annotated, and known as an act to prohibit the importation and the interstate transportation of films and other pictorial representations of prize fights, and for other purposes designed to be used, and which might be used, for the purpose of exhibition in the following manner; that is to say: That H. A. Rose, and divers other persons whose names are unknown, should and did bring and cause to be brought into the city of Lynchburg, Campbell county, Virginia, from another state of the United States, films and other pictorial representations of a prize fight, to wit, the Tunney-Dempsey prize fight; that in pursuance of said conspiracy, and during the continuance thereof, and in execution and to effect the object of the same, the said H. A. Rose, lessee thereof, and others, did on or about the ——— day of April, 1928, and thereafter on the 21st day of April, 1928, at Lynchburg, Virginia, unlawfully, knowingly, and feloniously advertise, on posters and billboards within the said city of Lynchburg, Virginia, the public exhibition of said prize fight films at said theater for the afternoon and evening of April 21, 1928; at said theater in the city of Lynchburg, Virginia, said H. A. Rose and others did unlawfully, knowingly, and feloniously publicly exhibit said films and other pictorial representations of the Tunney-Dempsey prize fight, which said films are designed to be used and have been used for the purpose of public exhibition at said theater."

The statutes to be considered are as follows:

(1) The Act of July 31, 1912, c. 263 (37 Stats. 240, 18 USCA §§ 405–407), which reads in part: "That it shall be unlawful for any person to deposit or cause to be deposited in the United States mails for mailing or delivery; or to deposit or cause to be deposited with any express company or other common carrier for carriage; or to send or carry from one state * * * to any other state, * * * any film * * * of any prize fight, * * * which is designed to be used or may be used for purposes of public exhibition."

The next section forbids receiving any such film, and the last section makes a violation of the statute a misdemeanor. I shall for brevity refer to the foregoing statute as the act of 1912.

(2) The federal conspiracy statute, section 37, Crim. Code, 18 USCA § 88, formerly section 5440, Rev. Stats., reads in part as follows: "If two or more persons conspire * * * to commit any offense against the United States * * * and one or more of such parties do any act to effect *the object of the conspiracy* * * *"

(3) The search warrant statute (18 USCA § 612; Act June 15, 1917, c. 30, tit. 11, § 2, 40 Stats. 228) authorizes the issue of a search warrant: (1) "When the property was stolen or embezzled in violation of a law

of the United States. * * * (2) When the property was used *as a means of committing a felony.* * * * (3) When the property, or any paper, is possessed, controlled, or used in violation of section 98 of this title" (which relates to activities in aid of a foreign government).

### (A) The Exhibition.

▇ In the affidavit the "object of the conspiracy," within the meaning of the conspiracy statute, is confused with what may be conveniently called the ultimate purpose of the conspirators. The object of the conspiracy was to violate section 1 of the act of 1912; the ultimate purpose of the conspirators was to publicly exhibit the films in Virginia; and this clear and unavoidable distinction makes necessary the conclusion that the object of the conspiracy had been fully and completely effected when the interstate transportation of the films had been completed. It also follows that the subsequent exhibition of the films in this city, while it was an act done to effect the ultimate purpose of the conspirators, could not have been an act done "to effect the object of the conspiracy." When the object of a conspiracy has been fully accomplished, no act subsequently done can possibly be an act done to effect the object of the conspiracy. To speak of an act done after the object in view has been fully accomplished as an act done to effect such object is an absurdity.

It seems clear that the films were used "as a means" of giving the exhibition which was being given when the affidavit was made. But Congress has never attempted to forbid the exhibition of pictures of prize fights, and, as the exhibition was not an act done to effect the object of the conspiracy, the use of the films in giving the exhibition is in this case without legal significance. The exhibition was merely an act (not declared to be a crime) done after the object of the conspiracy had been fully accomplished.

### (B) The Advertising.

Advertising the exhibition was an act done to effect the ultimate purpose of the conspirators; but it was not an act done to effect the object of the conspiracy, to wit, the illegal transportation of the films. Moreover, the films were in no possible sense used as a means of accomplishing the advertising.

### (C) The Transportation.

▇ In Berkowitz v. U. S. (C. C. A.) 93 F. 452, 455, it was held that an act which is the consummation of a conspiracy under section 37, Criminal Code, may be treated as the overt act, which is made an element of the felony denounced by that statute; and the soundness of that ruling may be here assumed.

The affidavit used in this case is badly expressed; but I shall assume that it was intended to assert that the transportation of the films from Illinois to Virginia was an overt act done by some one or more of the conspirators to effect the object of the conspiracy; and, so reading the affidavit, we are brought to a consideration of the power to issue a search warrant in cases such as this. By force of 18 USCA § 633, nothing in chapter 18 of the Code shall be held to repeal or impair any existing provisions of law regulating search and the issue of search warrants. After the enactment of the act of 1912 and prior to the passage of the act of June 15, 1917, there may possibly have existed power to validly issue a search warrant for pictures of prize fights which had been transported in violation of the act of 1912. But, if so, such power existed only in case the pictures had been used as the means of committing a felony. In the case assumed the pictures were not stolen property; they were not subject to federal taxes, they were not declared by federal law to be subject to forfeiture, and no federal law made the possession of them illegal. See Boyd v. U. S., 116 U. S. 616, 623, 6 S. Ct. 524, 29 L. Ed. 746; 24 R. C. L. 715, § 19; 25 Am. & Eng. Ency. (2d Ed.) 146.

It follows, whether authority for the issue of the search warrant in the instant case be based on the act of 1917 (18 USCA § 612, subd. 2), or on some previous rule of law, that there was no right to issue the warrant here unless the films had been used *as a means of committing a felony.* It may be assumed that property used as a means of committing an element of a felony is within the meaning of the law. However, the films in this case were not used as *a means* of committing the overt act of transportation. An object which is transported (if without power to move itself) cannot be a means of effecting the transportation. In no sense were the films a causative agency or objects through which, or by the help of which, the transportation was accomplished. The motorcar, or the railway engine, whichever was used in the transportation, was a means of accomplishing the violation of the act of 1912; but the films were not. A jimmy could be used as the means of committing a burglary; but the silver spoons carried away by the burglar could not be.

If the search-warrant statute had been so phrased as to include property which had been used *in connection with* the commission of a felony, the statute might embrace the case at bar. But no such language was employed, and the words used by the lawmakers cannot properly be construed as including any property, except such as was used as a causative agent or instrumentality, by the help of which a felony, or at least an element of a felony, was committed.

It may be added that there is every reason for a strict and precise reading of the words "used as a means of committing a felony." No process known to the law is more obnoxious or more provocative of resistance than a search warrant. Moreover, there is no reason for a broad construction. Property which has been stolen or embezzled is provided for by the first section of the statute in question; other property, which may not be legally possessed, is provided for by other statutes or by the common law, and consequently there was no reason for an intent that the second section of the act of 1917 should embrace property connected with the commission of a felony otherwise than as a causative agency or as a causative instrumentality. It seems to me to follow that the affidavit in this case did not state any fact which authorized the issue of the search warrant, and consequently that the seizure was illegal.

The fundamental difficulty with the government's case arises, as I believe, from a misconstruction of the act of 1912. That statute was, inter alia, intended to make it an offense to transport films of prize fights from one state to another; but it was not intended to make it an offense to give public exhibitions of films which had been transported in violation of the act of 1912. And the effort of the government throughout this proceeding has been to prevent the doing of an act which Congress has not attempted to forbid. An expectation that the act of 1912 would have the effect of obstructing and of largely preventing public exhibitions of pictures of prize fights, and an intent to declare such exhibitions to be offenses against the United States, are widely different; and the courts are not justified in confusing an expectation as to the practical effect of a statute with the command of the statute. While it has been decided that Congress had the power to regulate interstate commerce, as was done by the act of 1912 (Weber v. Freed, 239 U. S. 325, 36 S. Ct. 131, 60 L. Ed. 308, Ann. Cas. 1916C, 317), there is at the least room for doubt as to the constitutional power of Congress to forbid the public exhibition of pictures of prize fights in the states; and as Congress has most distinctly refrained from attempting to forbid such exhibitions, the courts cannot read into the statute an intent to prohibit such exhibitions.

As has been said, no warrant for the arrest of Rose, or any one, was issued or desired. There was never any intention of prosecuting him, or any one else, under the conspiracy statute, or under the act of 1912. The sole purpose of the seizure was to prevent the exhibition of the pictures of the prize fight. It follows that inquiry into the propriety or impropriety of the seizure of the films as incidental to an arrest of a person need not be made in this case.

The following cases are of interest in connection with the questions above discussed: U. S. v. Johnston (D. C.) 232 F. 970; Cullen v. Esola (D. C.) 21 F.(2d) 877; Consolidated Amusements v. Gober (D. C.) 22 F.(2d) 296; Atlanta Enterprises v. Crawford (D. C.) 22 F.(2d) 834; In re Film and Pictorial Representation (D. C.) 22 F.(2d) 837; U. S. v. Wilson (D. C.) 23 F.(2d) 112.