## Commonwealth v. Gould

*Archibald F. Jones* and *James S. Berger*, for Commonwealth.
*Fred A. Stebbins* and *Chester H. Ashton*, for defendant.

LEWIS, P. J., April 3, 1933.—The defendant appealed to this court from his summary conviction for a violation of The Game Law of May 24, 1923, P. L. 359.

The evidence discloses that in the open season game protectors, in the employ of the Pennsylvania Game Commission, armed with a search warrant, went to the defendant's residence and there found three legal deer hanging upon the porch. These were whole deer which had not been skinned out or cut up. They also found in the cellar one front quarter of another deer without the head attached thereto. The defendant volunteered to them the information that this front quarter had been given to him by Mr. Burr Smith. The officers went to Mr. Smith's place and found there the head and hide of a legal deer. Mr. Smith testifies he had told the defendant to help himself to venison from the carcass of the legal deer from which the head and hide had been taken, but did not see him get the meat. The hide from Smith's legal deer and the front quarter of venison, taken from the defendant's cellar, were produced in court, when it appeared that the hide showed evidence of but one bullet hole; and that one in the neck, in front of the front leg. The quarter of venison found in the defendant's cellar showed that the deer from which it came was shot through the last rib behind the front leg. The physical condition of the hide and the venison prove conclusively that the venison found in the defendant's cellar never wore the hide of the ten-point buck that was in Smith's possession. To ask any other conclusion would be an insult to ordinary intelligence. The deer from which the venison came was shot behind the front leg; the deer from which the hide came was shot in front of the front leg and not behind it.

The Game Law of May 24, 1923, P. L. 359, Sec. 701, provides:

"Except as otherwise provided in this act, it is unlawful for any person . . . to have in possession, either living or dead, any game, or any part thereof, except game lawfully taken during the open season."

Section 706, as amended by the Act of June 9, 1931, P. L. 455, provides:

"The possession or control of a deer or elk or of any portion of either of such animals, shall be prima facie evidence that such animal was killed unlawfully in this Commonwealth, unless the head is attached in a natural way."

And section 725, as amended by the Act of May 6, 1929, P. L. 1557, provides:

"Any person violating any of the provisions of the sections of this article shall, upon conviction, be sentenced to pay the following fines and costs of prosecution for each offense. . . . (o) Except as otherwise herein provided, for . . . having in possession . . . contrary to this article, . . . II Each deer, one hundred dollars."

It is manifest the defendant had in his possession a portion of a deer without the head attached thereto. Such possession was prima facie evidence that the animal was killed unlawfully. It is unlawful for any person to have in possession any game or part thereof except game lawfully taken. Having shown possession of the quarter of meat, the Commonwealth's prima facie case was complete.

In defense it is alleged that the meat came from Smith's legal deer, and no other explanation of its source was offered. The physical facts demonstrate conclusively that the meat in question did not come from Smith's deer. Therefore, the defense does not prevail.

It is contended on behalf of the defendant that section 706 of The Game Law is unconstitutional, and in support of that contention the case of Com. v. Madison, 16 D. & C. 824, is cited, in which the court said with reference to the above-quoted portion of that section:

"This provision shifts the burden of proof from the Commonwealth to the defendant, which is in the face of the fundamental principle of our criminal

law, which provides that every one is presumed to be innocent and law-abiding until the Commonwealth proves otherwise."

Such a shifting of the burden to the defendant is not strange to the frame of our criminal law nor peculiar to this enactment. There are many similar provisions relating to concealed weapons, bad checks, intoxicating liquors and narcotics.

By the Act of March 18, 1875, P. L. 33 (No. 38), Sec. 1, it is provided that any person within this Commonwealth who shall carry a deadly weapon concealed upon his person with intent therewith unlawfully and maliciously to do injury to any other person shall be deemed guilty of a misdemeanor.

The act further provides: "and the jury trying the case may infer such intent as aforesaid, from the fact of the said defendant carrying such weapons in the manner as aforesaid."

With reference to this act the Superior Court said in a per curiam opinion in Com. *v.* Bruno, 82 Pa. Superior Ct. 388:

"There was no doubt that the defendant, when arrested, had the revolver in his overcoat pocket. The offense consists in carrying such a weapon concealed 'With the intent therewith unlawfully and maliciously to do injury to any other person;' and the statute expressly provides that: 'The jury trying the case may infer such intent as aforesaid, from the fact of the said defendant carrying such weapon in the manner aforesaid.' When the Commonwealth proves that the weapon is carried concealed a prima facie case is made out, one which must go to the jury."

By the Act of April 18, 1919, P. L. 70, it is made a misdemeanor to draw a check with intent to defraud, knowing at the time the drawer has not sufficient funds for the payment of the same. And by section three of the act the drawing of a check, payment of which is refused because of lack of funds, "shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds" unless the maker shall have made good the check with interest and protest fees on ten days' notice.

We cannot find that the constitutionality of this act has ever been questioned.

By the Act of May 5, 1921, P. L. 407, Sec. 21, it was provided that when possession of intoxicating liquors has been given in evidence "The jury may infer that the same was for beverage purposes."

The constitutionality of this act was sustained in Com. *v.* Alderman, 275 Pa. 483.

By the Snyder Act of March 27, 1923, P. L. 34, Sec. 4, it is provided: "That proof of the possession of such intoxicating liquor shall be prima facie evidence that the same was acquired, possessed, and used in violation of this act."

The constitutionality of this act has been sustained. See Com. *v.* Rupert, 101 Pa. Superior Ct. 126; Com. *v.* Bloom, 89 Pa. Superior Ct. 308.

By the Narcotic Drugs Import and Export Act (21 U. S. C. § 174) it is provided:

"Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

It was held in Brolan *v.* United States, 236 U. S. 216, that an objection that the statute was unconstitutional was too frivolous to serve as a foundation for a writ of error.

Section 706 of The Game Law provides, further, that an investigating officer may demand that the person, found in possession of part of a deer, produce the head thereof or swear that the flesh in question is part of a deer legally killed.

It is urged on behalf of the defendant that the game protector did not demand of this defendant either the production of the head or an affidavit. It appears from the evidence the defendant volunteered to the officer the information that the flesh in question came from the Smith deer. Under such circumstances, a demand on the part of the officer would have been useless repetition.

It is further urged on behalf of the defendant that the entire section is unconstitutional in that said alternate procedure is delegated to the investigating officer. But it is to be observed that the provision of the act making the possession of part of a deer without the head attached prima facie evidence of the unlawful killing of the animal stands separate and distinct from the provision clothing the investigating officer with certain discretion. Section 104 of the act provides:

"The provisions of this act shall be severable, and, if any of its provisions shall be held to be unconstitutional, the decision of the court shall not affect the validity of the remaining provisions of this act. It is hereby declared as a legislative intent that this act would have been adopted by the General Assembly had such unconstitutional provisions not been included therein."

The fact that some portion of a statute is unconstitutional will not affect the validity of other portions of the statute where the unconstitutional portion is independent of and severable from the remainder, even though the severable portions are part of a single section. See Com. *v.* Metropolitan Casualty Ins. Co. of New York, 17 D. & C. 387, and cases therein cited.

It is urged in behalf of the defendant that the provisions of section 706 of The Game Law are unduly severe to the point of viciousness, and that under the act the law-abiding citizen who may have been the recipient of a venison steak or roast, and has it in his refrigerator at home, awaiting mealtime, when it is to be cooked that he may enjoy it, is, in the eyes of the law, a criminal and subject to the caprice of a game protector. We have never heard of a law-abiding citizen who was going peaceably about his own affairs carrying a concealed weapon for his proper personal protection or amusement being molested under the terms of the concealed weapons act, nor of the recipient of venison being molested unless other surrounding circumstances indicated an illegal kill. It is a well-settled principle of law that a court should not hold an act unconstitutional on account of assumption that possible misconduct on the part of the officers charged with its administration may result in inequality and discrimination against individuals, when proper and faithful performance of their duties would not have such a result.

Legislation may not be annulled on account of apprehension of its maladministration by the public officials entrusted with its due execution.

Proper protection of the Commonwealth's resources of wild game is of immense importance to a large portion of our citizens. Inadequate protection in the past resulted in the extinction of deer in many sections of the Commonwealth. The wisdom of the game laws, as now existing, has been demonstrated by the repopulation of those areas with deer. Certain provisions of the game laws would become impossible of enforcement if the removal of the incriminating insignia from illegal deer made the possession of the meat remaining lawful. When maladministration and discrimination appear on the part of the officials entrusted with the enforcement thereof this court will be prompt to relieve.

### Sentence and order

And now, April 3, 1933, pursuant to the opinion in the above case, the court finds the defendant, Floyd Gould, guilty of unlawful possession of deer in violation of section 701 of the Act of May 24, 1923, P. L. 359, Art. VII.

It appearing to the court that the defendant has never before been imprisoned for crime, either in this state or elsewhere, and the court believing that the character of the defendant and the circumstances of the case are such that he is not likely again to engage in an offensive course of conduct, and that the public good does not demand or require that the defendant should suffer the penalty imposed by law, the imposing of the sentence is suspended, and the defendant, Floyd Gould, is placed on parole for one year on the following terms and conditions, viz., the payment of the costs of prosecution and the sum of $25 for the use of Potter County.