## BROLAN *v.* UNITED STATES.

### ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

No. 645. Submitted January 5, 1915.—Decided February 23, 1915.

In a case from the District Court, if the power to review attaches because of a constitutional question, that authority gives rise to the duty of determining all the questions involved, including those that otherwise are within the exclusive jurisdiction of the District Court, but if the constitutional question asserted as the basis for jurisdiction of this court is frivolous, this court has no power to review it or any of the other questions involved. The writ of error must be dismissed.

The absolute power expressly conferred upon Congress to regulate foreign commerce involves the existence of power to prohibit importations and to punish the act of knowingly concealing or moving merchandise which has been imported in successful violation of such prohibition. *Keller* v. *United States*, 213 U. S. 138, distinguished.

The contention in this case that § 2 of the Act of February 9, 1909, c. 100, 35 Stat. 614, regulating the importation of opium, is unconstitutional as beyond the power of Congress, has been so foreclosed by prior decisions of this court that it is frivolous and affords no basis for jurisdiction of this court under § 238, Judicial Code.

THE facts, which involve the jurisdiction of this court under § 238, Judicial Code, are stated in the opinion.

*Mr. Edward M. Cleary, Mr. John L. McNab, Mr. Bert Schlesinger, Mr. S. C. Wright* and *Mr. P. S. Ehrlich,* for plaintiffs in error.

*Mr. Assistant Attorney General Warren* for the United States.

MR. CHIEF JUSTICE WHITE delivered the opinion of the court.

The indictment against the plaintiffs in error contained two counts: The first charged a conspiracy to wrongfully import opium into the United States in violation of the first portion of § 2 of the act of February 9, 1909, c. 100, 35 Stat. 614. The second charged a conspiracy to unlawfully receive, conceal and facilitate the transportation of opium which had been wrongfully imported into the United States with knowledge of such previous, illegal importation in violation of the latter part of the section referred to. The first count was quashed on the ground that the overt acts alleged occurred after the illegal importation or smuggling which was counted on. On the second count there was a conviction and sentence and this direct writ of error to the trial court is prosecuted to reverse the same. The right to a reversal rests upon two propositions: the one, that the clause of the section upon which the second count was based is repugnant to the Constitution of the United States because beyond the legislative power of Congress to enact and because moreover its provisions intrinsically constitute a usurpation of the powers reserved to the States by the Constitution; and the other, the insistence that various material errors were committed by the trial court during the progress of the case aside from the constitutionality of the statute.

Our jurisdiction to directly review depends upon the constitutional question since the other matters relied upon are as a general rule within the exclusive jurisdiction of the Circuit Court of Appeals of the Ninth Circuit, although if power to review attaches to the case because of the constitutional question, that authority gives rise to the

duty to determine all the questions involved. *Burton* v. *United States*, 196 U. S. 283; *Williamson* v. *United States*, 207 U. S. 425, 432; *Billings* v. *United States*, 232 U. S. 261, 276. Under these circumstances to prevent a disregard of the distribution of appellate power made by the Judicial Code and to see to it that there is something on which our jurisdiction to review can rest, it behooves us in this as in all other cases to see whether the question upon which our power depends is really presented, and if not, because although in form arising it is in substance so wholly wanting in merit as to be frivolous, to decline the exercise of jurisdiction. *Farrell* v. *O'Brien*, 199 U. S. 89, 100; *Goodrich* v. *Ferris*, 214 U. S. 71, 79; *Hendricks* v. *United States*, 223 U. S. 178.

Coming to that subject the entire absence of all ground for the assertion that there was a want of power in Congress for any reason to adopt the provision in question is so conclusively foreclosed by previous decisions as to leave no room for doubt as to the wholly unsubstantial and frivolous character of the constitutional question based upon such contention. In *Buttfield* v. *Stranahan*, 192 U. S. 470, in stating the previously settled doctrine on the subject it was said, p. 492:

"The power to regulate commerce with foreign nations is expressly conferred upon Congress, and being an enumerated power is complete in itself, acknowledging no limitations other than those prescribed in the Constitution. *Lottery Case*, 188 U. S. 321, 353–356; *Leisy* v. *Hardin*, 135 U. S. 100, 108. Whatever difference of opinion, if any, may have existed or does exist concerning the limitations of the power, resulting from other provisions of the Constitution, so far as interstate commerce is concerned, it is not to be doubted that from the beginning Congress has exercised a plenary power in respect to the exclusion of merchandise brought from foreign countries; not alone directly by the enactment of embargo statutes,

but indirectly as a necessary result of provisions contained in tariff legislation. It has also, in other than tariff legislation, exerted a police power over foreign commerce by provisions which in and of themselves amounted to the assertion of the right to exclude merchandise at discretion. This is illustrated by statutory provisions which have been in force for more than fifty years, regulating the degree of strength of drugs, medicines, and chemicals entitled to admission into the United States and excluding such as did not equal the standards adopted. 9 Stat. 237, chap. 70; Rev. Stat., § 2933, U. S. Comp. Stat. 1901, p. 1936." And see *Oceanic Navigation Co.* v. *Stranahan,* 214 U. S. 320, 334, 335; *The Abby Dodge,* 223 U. S. 166, 176.

Nor is there any ground upon which to rest the contention that although under this settled doctrine it is frivolous to question the power of Congress to prohibit importations and punish a violation of such prohibition, it is open to controversy and therefore not frivolous to contend that there is a want of power to prohibit and punish the act of knowingly concealing or moving merchandise which has been successfully imported from a foreign country in violation of the prohibitions against such importations. This conclusion is inevitable since it is obvious that to concede that the wrongful and successful evasion of the prohibition against bringing in imported merchandise or of knowingly, in violation of a further prohibition, dealing with such merchandise was beyond the scope of the complete power to prohibit importation, would be in substance to deny any power whatever. Indeed, it is evident that a power to prohibit which is operative and effective only as long as its prohibitions are not disobeyed is not an absolute power but is scarcely worthy of being denominated a relative one. But the authority being absolute, it follows that the right to assert it must endure and reach beyond the mere capacity of persons to evade its com-

mands to the control of those things which are essential
to make the power existing and operative,—a conclusion,
the truth of which cannot be escaped in the light of the
doctrine on that subject, so luminously stated in *Gibbons*
v. *Ogden*, 9 Wheat. 1, and which has been the guide by
which the Constitution has been successfully interpreted
and applied from that day to this.

While these considerations demonstrate that the at-
tempted distinction is but a denial of the existence of a
power which it is conceded it would be frivolous to deny,
we briefly refer to the legislative history from the begin-
ning for the purpose of showing that the authority which
it is now insisted was not included in the right to prohibit
importation has at all times been considered to be and
treated as within the scope of such authority. Thus in
1799 the Customs Act of that year (March 2, 1799, § 69,
chap. 22, 1 Stat. 627, 678) contained a provision for a
seizure and forfeiture of merchandise imported in viola-
tion of its terms and imposed penalties upon any person
who should "conceal or buy any goods, wares or mer-
chandise, knowing them to be liable to seizure by this
act." And by the act of March 3, 1823 (chap. 58, 3
Stat. 781), amending the act of March 2, 1821 (chap. 14,
3 Stat. 616) a like authority was asserted and penalties
and forfeitures were imposed for violations. Again in
1866 in an act to prevent smuggling (§ 4, act of July 18,
chap. 201, 14 Stat. 178, 179) the identical provisions found
in the section here in question were made applicable
generally to all importations and were sanctioned by
making violations thereof criminal. And these provisions
passed into the Revised Statutes (§ 3082), and are in force
today, the particular provision here involved concerning
opium being part of the act of 1909 prohibiting the im-
portation of that article. In the face of this unbroken
legislative interpretation of the extent of the power to
prohibit covering a period of more than one hundred and

fifteen years, of the constant exertion of administrative authority under such legislation and of the assumption that such power undoubtedly obtained, manifested by a multitude of judicial decisions too numerous to refer to although many of them are cited in the argument of the Government, we can discover no possible ground upon which the contention to the contrary here relied upon can rest, and therefore the conclusion that it is wholly unsubstantial and frivolous cannot possibly be escaped.

In the argument it is however suggested that some support for the view relied upon results from the ruling in *Keller* v. *United States*, 213 U. S. 138, wherein a provision of the act known as the White Slave Act (Feb. 20, 1907, chap. 1134, 34 Stat. 898) was held to be beyond the power of Congress to enact. In fact the provisions of that statute are printed in a parallel column with the statute here assailed and the conclusion is drawn that the identity between them is perfect and therefore, despite the considerations involved in the review which we have made, it has come to pass not only that the assertion of the want of power in Congress here relied upon is not frivolous, but that it is well founded and must be upheld if the *Keller Case* is not to be overruled. But the contention is itself frivolous since it is based upon a mere failure to observe the broad line which separates the ruling in the *Keller Case* from the question here involved. Nothing can make this plainer than the mere statement that while in the *Keller Case* it is true there was a prohibition against the importation for immoral purposes of the persons whom the statute enumerated, the act punished not the harboring of persons for immoral purposes who had been brought into the United States in violation of the prohibition against importation, but its provisions also embraced the harboring of persons for immoral purposes if they were aliens even although they had come into the United States lawfully. The basis upon which the *Keller Case* proceeded

was so manifest that Congress amended the act by making the penal clause which was held unconstitutional, applicable only to those immoral aliens who had come into the United States in violation of the prohibitions of the act (March 26, 1910, § 2, c. 128, 36 Stat. 263, 264).

In the argument reference is made to decisions of this court dealing with the subject of the power of Congress to regulate interstate commerce, but the very postulate upon which the authority of Congress to absolutely prohibit foreign importations as expounded by the decisions of this court rests is the broad distinction which exists between the two powers and therefore the cases cited and many more which might be cited announcing the principles which they uphold have obviously no relation to the question in hand. In fact it is true to say of the citation of these cases as well as of the reference to the *Keller Case* that a proposition which is so wholly devoid of merit as to be frivolous is not given a substantial character by an attempt to support it by contentions which are themselves wholly devoid of all merit and frivolous.

There being no possible ground upon which to attribute even semblance of foundation for the constitutional question relied upon, it follows that it affords no basis for our jurisdiction to directly review and the writ of error is

*Dismissed for want of jurisdiction.*