222 P.2d 997

**WILLIAMS v. FINLEY et al.**

No. 4897.

Supreme Court of Arizona.

Decided Oct. 18, 1950.

Norman S. Herring, of Douglas, for appellant.

John L. Sullivan, Atty. Gen., Burr Sutter, Asst. Atty. Gen., Perry M. Ling, Asst. Atty. Gen., on the brief.

STANFORD, Justice.

Appellant brought this class action in the Superior Court asking for a declaratory judgment, as to the applicability of certain statutes, hereinafter enumerated, that have to do with inspection of live stock brought through the port of entry at Douglas, Arizona, against defendants who are members and employees of the Arizona Live Stock Sanitary Board.

Appellant is a resident of Cochise County, and a cattle grower and an importer of cattle from Mexico. The controversy arose between this appellant and the appellees because of the claim by the latter that the laws of Arizona require them to inspect all such cattle brought over the International Boundary Line, irrespective of their ultimate destination.

The complaint alleges three different ways by which cattle are imported from Mexico to the United States, and in brief they are:

(1) Importations from Mexico in bond when the cattle are intended to be returned to Mexico. It happens that railroad facilities in Mexico are either non-existent in certain areas or not sufficient to meet the needs for transporting cattle in that Republic to other parts of Mexico and hence the use of highways or railroads, entering United States, to carry said live stock for delivery at a different place in Mexico, is imperative.

(2) Cattle imported from Mexico, destined for points in United States other than Arizona.

(3) Cattle imported from Mexico, destined for some point within Arizona.

It is appellant's claim that U. S. Customs Officials and the U. S. Dept. of Agriculture are in charge while the cattle are driven to the Southern Pacific stock pens, near Douglas, Arizona, three-fourths of a mile from the International Boundary Line; that while so in charge, the cattle are dipped and weighed and placed on board the Southern Pacific cattle cars at said pens; that the cattle are at all times moving in either foreign or interstate commerce from the time they are delivered to the U. S. Officials until they reach the declared destination.

A motion to dismiss was filed by appellees, alleging a "failure of the complaint to state a claim upon which relief may be granted."

The trial court, in granting the motion and entering its order of dismissal, stated: "That the complaint wholly fails to state a cause of action against the defendants and that sections 50-304, 50-305, 50-306 and 50-307, A.C.A. 1939, do apply to cattle of plaintiff and others similarly situated, imported from Mexico."

The four sections of our Code involved, contain the following matter:

50-304: "The inspectors shall inspect for health and for marks and brands, at the railway loading station, at the place of exit from the state, and at all places where live stock are gathered to be sold, transported or driven off their range for any purpose whatsoever. * * *"

50-305: "Inspections * * * shall be made in such a manner as to enable the inspector to personally see and inspect each and every mark and brand, and record same."

50-306: "(a) Before any neat animals, horses, mules or asses are slaughtered, sold or driven or conveyed from their accustomed range, or driven or conveyed * * * from a pasture or other place where they have been kept, such animals must be inspected for health, brands and marks immediately before such drive or conveyance.

"(b) * * * it shall be unlawful to slaughter, sell, drive or convey any of the aforesaid animals without such inspection. * * * The owner or person in charge shall pay said inspector ten cents (10¢) per head for such inspection. * * *"

50-307: "It shall be unlawful for any railroad to receive any neat animals, horses, mules or asses for transportation unless furnished with a certificate by an inspector showing that such stock has been inspected for brands and health. * * *"

From the granting of appellees' motion to dismiss, appeal was taken to this court and hence the issue involved is whether the said sections of our code apply in all three situations.

■ The case of Tres Ritos Ranch Co. v. Abbott, 44 N.M. 556, 105 P.2d 1070, 1074, 130 A.L.R. 963, a New Mexico case, which also borders on the Republic of Mexico, is where suit was brought to recover taxes claimed to have been illegally assessed on cattle shipped from Mexico. The court there said: "If cattle are imported and held in a railroad car, pen or corral for a reasonable time, whether such a corral is or is not a bonded warehouse, the detention affords good proof quite independent of the 1930 Act that the cattle are still imports, just as the original package does with respect to goods. But when they are taken to a ranch for the purpose of grazing, fattening and breeding, the contrary is shown."

■ Appellant protests the State Inspectors' taking charge of the cattle after the dipping process, when he says: "It is at this point that the Arizona Brand Inspector attempts to exercise his jurisdiction. The cattle at this time are truly beginning the movement in foreign commerce. They have barely been admitted to such foreign commerce by the officers of the U. S. Government and are not within the jurisdiction of the State of Arizona at all. They have not yet become mixed with the property of this country nor ceased their transportation, and only when the end of the journey is reached and they become mixed with the goods of the country will *they cease their character as goods in foreign commerce.*"

From 11 Am.Jur., Commerce, sec. 11, we quote: "The power to regulate commerce with foreign nations, conferred upon Congress by the Constitution, is exclusive and plenary; its exercise may not be limited, qualified or impeded to any extent by state action."

And in the case of University of Illinois v. United States, 289 U.S. 48, 53 S.Ct. 509, 77 L.Ed. 1025, the U. S. Supreme Court

said: "The words of the Constitution 'comprehend every species of commercial intercourse between the United States and foreign nations. No sort of trade can be carried on between this country and any other, to which this power does not extend.' * * * It is an essential attribute of the power that it is exclusive and plenary. As an exclusive power, its exercise may not be limited, qualified, or impeded to any extent by state action. * * * The principle of duality in our system of government does not touch the authority of the Congress in the regulation of foreign commerce. * * * The Congress may determine what articles may be imported into this country and the terms upon which importation is permitted."

The complaint specifically alleges that all of the cattle herein referred to, regardless of their destination and into which of the three classes they may fall, are "delivered on board the Southern Pacific cattle cars from said cattle pens" for shipment to their ultimate destination. Unquestionably all of such cattle thus entering the State of Arizona at the International Boundary Line are in interstate and foreign commerce. We expressly limit our decision to shipments of cattle made under the facts as here presented and hold that as to such shipments, the inspection laws of Arizona do not apply. An entirely different legal situation would be presented if the destination of the cattle for Arizona ranches were declared, at the time of import, to be Douglas or some other similar point of entry.

Judgment reversed.

LA PRADE, C. J., and UDALL, PHELPS and DE CONCINI, JJ., concurring.