**UNITED STATES of America**
v.
**Peter E. LaFROSCIA, Defendant.**
**No. 72 Cr. 1295.**

United States District Court,
S. D. New York.
Feb. 22, 1973.

Whitney North Seymour, Jr., U. S. Atty., Southern District of New York, for the United States; W. Cullen MacDonald, Asst. U. S. Atty., of counsel.

Paul K. Rooney, New York City, for defendant.

**1340**

METZNER, District Judge:

The defendant, Peter LaFroscia, is the subject of a two count indictment. The first charges him with importing approximately 80 kilograms of marihuana into the United States in violation of 21 U.S.C. §§ 952, 960(a). The second charges him with possessing that same marihuana on board a vessel entering the United States in violation of 21 U.S.C. §§ 955, 960(a). He now moves for dismissal of the indictment on the ground that there is no rational basis for Congress to classify marihuana as a controlled substance under 21 U.S.C. § 812. Alternatively, he moves for a dismissal on the ground that if marihuana should be controlled, it should be placed in Schedule V rather than Schedule I where it is currently found.

The defendant argues that marihuana is improperly classified as a controlled substance because of the recent findings of the Commission on Marihuana and Drug Abuse, which was established by Congress when it enacted the Comprehensive Drug Prevention and Control Act of 1970, P.L. 91–513; 84 Stat. 1236 (the Act). The defendant claims that these findings indicate that marihuana does not possess the requisite qualities required for inclusion as a controlled substance under Section 811 of the Act. Alternatively he contends that the Commission's report demonstrates that if it is to be controlled, marihuana belongs in Schedule V, not Schedule I. (See 21 U.S.C. § 812(b)).

█ █ The Supreme Court has long ago held that Congress has plenary power to prohibit the importation of narcotics. *See, e. g.,* Brolan v. United States, 236 U.S. 216, 35 S.Ct. 285, 59 L.Ed. 544 (1915). This power flows from Congress' constitutional authority to regulate commerce with foreign nations. In Buttfield v. Stranahan, 192 U.S. 470, 492, 24 S.Ct. 349, 354, 48 L.Ed. 525 (1904), the Court observed:

"  .  .  .  from the beginning Congress has exercised a plenary power in respect to the exclusion of merchandise brought from foreign countries; not alone directly by the enactment of embargo statutes, but indirectly, as a necessary result of provisions contained in tariff legislation. It has also .  .  .  exerted a police power over foreign commerce by provisions which in and of themselves amounted to the assertion of the right to exclude merchandise at discretion."

*See also* Daut v. United States, 405 F.2d 312 (9th Cir. 1969), cert. denied, 402 U.S. 945, 91 S.Ct. 1624, 29 L.Ed.2d 114 (1971). The enactment of Sections 952 and 955 is therefore a permissible exercise of Congress' plenary power.

█ The constitutionality of the Act, as it applies to marihuana, was recently challenged before the Ninth Circuit in United States v. Rodriquez-Camacho, 468 F.2d 1220 (9th Cir. 1972), which involved a conviction for possession of marihuana with intent to distribute under 21 U.S.C. § 841(a). In affirming the conviction, the court there commented:

"Congress has concluded that ' .  .  controlled substances have a substantial and detrimental effect on the health and general welfare of the American people.' Appellant urges that this assertion is inapplicable to marijuana. This is a matter, however, whose ultimate resolution lies in the legislature and not in the courts. It is sufficient that Congress had a rational basis for making its findings." (468 F.2d at 1222.)

The court sees no reason for disagreeing with the decision of the Ninth Circuit. In addition, Section 801 of Title 21 provides that:

"The illegal importation  .  .  .  of controlled substances [has] a substantial and detrimental effect on the health and general welfare of the American people." 21 U.S.C. § 801(2).

Similarly, the legislative history of Title III of the Act provides that "through the provisions of Title III, the importation and exportation of *all* controlled substances—narcotics, marihuana  .  .  .

—would be covered by a single statute." 1970 U.S.Code Cong. & Admin.News, p. 4638.

■ The fact that the Commission on Marihuana and Drug Abuse has recently rendered its first report, which proposes a relaxation of the laws regarding marihuana, does not dictate a different result. Congress has not seen fit to act on the recommendations. Any judicial action at this stage would be an unwarranted intrusion into the legislative province.

■ There is an alternative ground for upholding the constitutionality of the Act. The United States is a party to the Single Convention on Narcotic Drugs (18 U.S.T. 1407, T.I.A.S. No. 6298, New York, March 30, 1961, ratified by United States, 1967), which binds all signatories to control persons and enterprises engaged in the manufacture, trade and distribution of specified drugs. Marihuana is so specified. The court in *Rodriquez-Camacho, supra,* concluded that the "enactment of § 841(a)(1) is a permissible method by which Congress may effectuate the American obligation under that treaty." 468 F.2d at 1222. *See also,* Missouri v. Holland, 252 U.S. 416, 40 S.Ct. 382, 64 L.Ed. 641 (1920). A fortiori, Congress may also meet its treaty obligations by enacting Sections 952 and 955 regarding the importation of drugs into the United States, inasmuch as these provisions relate even more to the international traffic in narcotics which the treaty was designed to abate.

Similarly, section 811(d) provides that:

"If control is required by United States obligations under international treaties, conventions, or protocols in effect on the effective date of this part, the Attorney General shall issue an order controlling such drug under the schedule he deems most appropriate to carry out such obligations, without regard to the findings required by subsection (a) of this section or section 812(b) of this title and without regard to the procedures prescribed by subsections (a) and (b) of this section."

*See also,* 1970 U.S.Code Cong. & Admin. News, pp. 4566, 4603. It is clear that these provisions justify the placement of marihuana in Schedule I because of the United States' treaty obligations.

■■ Finally, the motion to dismiss must be denied on the ground that the defendant has failed to exhaust his administrative remedies in challenging the constitutionality of the Act as it applies to marihuana. In enacting the new drug law, Congress provided for specific, detailed administrative procedures for decontrolling and reclassifying the various substances. Since the defendant has not sought to utilize these extensive procedures, he is barred from challenging the validity of the classifications in a judicial proceeding. *See* McKart v. United States, 395 U.S. 185, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969); McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971). We are mindful of the Court's admonition in *McKart* "that use of the exhaustion doctrine in criminal cases can be exceedingly harsh," and that the doctrine should not be applied unless there is a particular "governmental interest compelling enough" to justify the forfeiting of judicial review. Such an "interest" generally exists in a situation like the present one, where the function of the administrative agency involves "the exercise of discretionary powers granted the agency by Congress, or requiring the application of special expertise." McKart v. United States, *supra* 395 U.S. at 197, 89 S.Ct. at 1664. If the defendant were to be permitted to seek court review of the placement of marihuana in Schedule I without first applying to the Attorney General for such relief under 21 U.S.C. § 811, Congress' statutory scheme would be thwarted.

Motion denied.

So ordered.