803 P.2d 917

**The STATE of Arizona, Appellee,**

v.

**Gerald Dean DUNN, Appellant.**

**No. 2 CA–CR 89–0646.**

Court of Appeals of Arizona,
Division 2, Department A.

Sept. 6, 1990.

As Corrected Sept. 13 and
Sept. 28, 1990.

Reconsideration Denied Oct. 16, 1990.

Review Denied Feb. 5, 1991.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Crane McClennen, Phoenix, for appellee.

Robert Arentz, Cochise County Public Defender by James L. Conlogue, Bisbee, for appellant.

## OPINION

ROLL, Presiding Judge.

Gerald Dean Dunn appeals from his conviction for importation of cocaine, arguing that A.R.S. § 13–3408(A)(7) is unconstitutional because it impinges upon the federal government's exclusive domain of regulating foreign commerce. For the reasons set forth below, we find the statute constitutional and affirm.

## FACTS

Viewing the evidence in the light most favorable to the state, *State v. Guerra,* 161 Ariz. 289, 293, 778 P.2d 1185, 1189 (1989), the evidence at trial established that on June 21, 1989, Dunn took cocaine into Mexico and then re-entered Arizona with the cocaine. Upon re-entry into the United States, he was detained at a border inspec-

tion station, where it was discovered that he possessed 1.8 grams of cocaine.

## PROCEDURAL BACKGROUND

The United States Attorney's Office declined prosecution and the state initiated prosecution of Dunn for importing cocaine, transporting cocaine for sale, and selling, transferring, or offering to sell or transfer a narcotic drug. When the matter was submitted to the grand jury, the grand jury struck from the indictment the terms "transport for sale," "offer to transport for sale," and "sold, transferred, and offered to sell a narcotic drug." The remaining charge was importing or offering to import cocaine. A jury found Dunn guilty and he was sentenced to 5.25 years' imprisonment.

## ISSUES ON APPEAL

On appeal, Dunn argues that the Arizona statute prohibiting importation of cocaine violates the United States Constitution. He argues that (1) Article 1, Sec. 8, cl. 3 of the United States Constitution gives the federal government exclusive and plenary power over foreign commerce and any attempt by a state to regulate foreign commerce is unconstitutional; and (2) because the Arizona statute punishes importation more severely than its federal counterpart, an impermissible conflict exists.

## DISCUSSION

The issues presented require that we rule upon whether the commerce clause of the United States Constitution precludes the State of Arizona from outlawing the importation of drugs.

### Commerce Clause

■ The Constitution states that Congress shall "regulate commerce with foreign nations...." Art. I, § 8, cl. 3. The purpose of this clause is to prohibit states from impeding federal uniformity in an area where federal uniformity is essential. *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 448, 99 S.Ct. 1813, 1821, 60 L.Ed.2d 336, 347 (1979).

■ Congress has plenary power to prohibit the importation of narcotics. *See, e.g., Brolan v. United States*, 236 U.S. 216, 35 S.Ct. 285, 59 L.Ed. 544 (1915); *Daut v. United States*, 405 F.2d 312 (9th Cir.1968), *cert. denied*, 402 U.S. 945, 91 S.Ct. 1624, 29 L.Ed.2d 114 (1971). This power originates from Congress's authority to regulate commerce with foreign nations. U.S. Const., art. I, § 8, cl. 3; *Buttfield v. Stranahan*, 192 U.S. 470, 492, 24 S.Ct. 349, 354, 48 L.Ed. 525 (1904); *United States v. LaFroscia*, 354 F.Supp. 1338, 1340 (S.D.N.Y.1973). In *Board of Trustees v. United States*, 289 U.S. 48, 56, 53 S.Ct. 509, 509, 77 L.Ed. 1025, 1028 (1933), the Supreme Court stated that this clause comprehends "every species of commercial intercourse between the United States and foreign nations." The Court further stated that the federal government's power to regulate foreign commerce is "exclusive and plenary." *Id.* The exercise of this power may not be limited, qualified, or impeded to any extent by state action. *Id.* at 56–57, 53 S.Ct. at 509, 77 L.Ed. at 1028; *Williams v. Finley*, 71 Ariz. 27, 30, 222 P.2d 997, 999 (1950).

A.R.S. § 13–3408(A)(7), prohibiting the importation of narcotics, is contained in Title 13, Chapter 34 of the Arizona Criminal Code. Obviously, this chapter is designed to promote the health and welfare of Arizona inhabitants. In *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 442, 80 S.Ct. 813, 815, 4 L.Ed.2d 852, 855 (1960), the Supreme Court recognized a municipality's right to exercise its police power by adopting a code prohibiting vessels from emitting excessive pollutants, even though the code placed an additional burden upon interstate commerce.

■ State regulation of interstate commerce is permissible if it is even-handed, effectuates a legitimate public interest, and is not pre-empted by federal action. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174, 178 (1970); *Huron*, 362 U.S. at 443, 80 S.Ct. at 815, 4 L.Ed.2d at 856. In *Huron*, the Supreme Court stated:

[T]he Constitution when "conferring upon Congress the regulation of com-

merce, ... never intended to cut the States off from legislating on all subjects relating to the health, life, and safety of their citizens, though the legislation might indirectly affect the commerce of the country. Legislation, in a great variety of ways, may affect commerce and persons engaged in it without constituting a regulation of it, within the meaning of the Constitution."

362 U.S. at 443–44, 80 S.Ct. at 816, 4 L.Ed.2d at 856, quoting *Sherlock v. Alling,* 93 U.S. 99, 103, 23 L.Ed. 819, 820 (1876).

The commerce clause analysis of interstate commerce differs from analysis of permissible regulation of foreign commerce. When state regulation of foreign commerce is presented, a more extensive constitutional inquiry is required. *Japan Line, Ltd., supra,* 441 U.S. at 446, 99 S.Ct. at 1820, 60 L.Ed.2d at 346.

### State Regulation of Foreign Commerce

■ Undeniably, Congress's power to regulate foreign commerce is unchecked by considerations of federalism and state sovereignty, *Id.* at 448–49 n. 13, 99 S.Ct. at 1821–22 n. 13, 60 L.Ed.2d at 348 n. 13, and foreign commerce is a matter of national concern requiring uniformity. *Id.* at 448–49, 99 S.Ct. at 1821–22, 60 L.Ed.2d at 348. From these principles, Dunn argues that any attempted state regulation of foreign commerce is unconstitutional. It is clear, however, that not every such attempt is forbidden by the Constitution. L.H. Tribe, *American Constitutional Law* § 6–21 (2d ed. 1988); *Japan Line, Ltd., supra,* 441 U.S. at 446, 99 S.Ct. at 1820, 60 L.Ed.2d at 346.[1] While state imposition of duties and the placement of other burdens on foreign commerce have generally been declared impermissible, decisions in this area are of limited application. The Arizona statute prohibiting the importation of drugs into Arizona differs in kind and purpose from regulations adopted by other states merely designed to thwart competition or raise revenue. Rather, the Arizona statute is di-

rectly related to the exercise of police power aimed at the smuggling of illegal drugs into Arizona. Arizona's importation statute is even-handed—it forbids *any* importation of illegal drugs. Furthermore, as is discussed below, it is designed to effectuate a legitimate public interest.

### Pre–Emption by Federal Regulation

Dunn argues that federal legislation preempts the field of regulation.

■ Before pre-emption occurs, Congress's intent to supersede the exercise of the state's police power must be clearly manifested. *Kelly v. Washington,* 302 U.S. 1, 12, 58 S.Ct. 87, 92, 82 L.Ed. 3, 11–12 (1937). In *Louisiana Public Serv. Comm'n v. F.C.C.,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369, 381–82 (1986), the Supreme Court described pre-emption as follows:

> Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. [Citations omitted.]

*Japan Line, Ltd., supra,* relied upon by Dunn, is inapposite to the matter before us. There, the Supreme Court held that California's taxation of Japanese cargo containers which were merely in transit through the state, were taxed in Japan, and were exempt from import taxes under the Customs Convention on Containers, was unconstitutional. The Court reasoned that the containers could not be taxed on an appor-

---

1. The Tenth Amendment to the United States Constitution provides:

   The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respective, or to the people.

tioned basis and the tax would frustrate the achievement of federal uniformity. 441 U.S. at 447–50, 99 S.Ct. at 1821–22, 60 L.Ed.2d at 347–49.[2] Here, no taxation issues are presented and, as is discussed below, the Arizona statute does not frustrate the achievement of federal uniformity in the regulation of drug importation.

■ Title 21, Chapter 13, subchapter I of the Comprehensive Drug Control Act, encompasses control and enforcement of drug abuse. 21 U.S.C. § 903 states:

> No provision of this subchapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

The dissent correctly points out that the importation provisions of the Code, however, appear in subchapter II at 21 U.S.C. §§ 951–966.[3] On the other hand, subchapter II contains no recitation that Congress intended federal law to pre-empt state law.

Absent any express intent by Congress, this court must determine from the totality of circumstances whether Congress has chosen to occupy the entire field of regulating the importation of narcotics. The analysis looks to (1) the scheme of federal regulation to determine if it is so pervasive that we may reasonably infer Congress left no room for the states to supplement it and (2) whether the legislation touches a field in which the federal interest is so dominant

that a presumption arises that state laws on the same subject are impermissible. *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Devel. Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 1722, 75 L.Ed.2d 752, 765 (1983); *City of Burbank v. Lockheed Air Terminal, Inc.*, 411 U.S. 624, 633, 93 S.Ct. 1854, 1859, 36 L.Ed.2d 547, 553 (1973).

Dunn argues that the field is pre-empted because the legislative history states that the Comprehensive Drug Control Act was designed to replace all law relating to the importation of controlled substances. We disagree that the history supports the conclusion that federal pre-emption was intended, although it does indicate an intent to consolidate all *federal* laws. The legislative history reveals that Congress intended to collect and conform the diverse narcotic and dangerous drug laws that Congress had enacted since 1914. 1970 U.S.Code Cong. & Admin.News 4566, 4571. To further that goal, subchapter II of the act was designed to replace all federal law relating to the importation and exportation of narcotic drugs. *Id.* at 4638.

Federal regulations governing importation of narcotics include 21 U.S.C. §§ 951 and 952 and 21 C.F.R. 1312. The act declares that it is unlawful to import any of the controlled substances or narcotic drugs enumerated in subchapter I and delegates all exceptions to the Attorney General. The federal regulations specify the procedures for securing exceptions. 21 C.F.R. 1312 *et seq.*

While the scheme of federal regulation is extensive, we cannot reasonably infer that Congress intended to deprive the states of an additional weapon to combat the flow of

---

**2.** *Compare Michelin Tire Corp. v. Wages*, 423 U.S. 276, 286, 96 S.Ct. 535, 541, 46 L.Ed.2d 495, 503–04 (1976), in which the Supreme Court upheld a state's nondiscriminatory ad valorem property tax, despite the federal government's exclusive regulation of foreign commerce, because the tax did not fall on imports because of their place of origin, it could not be used to create a protective tariff, nor could it be applied selectively.

**3.** 21 U.S.C. § 965, which extends Part E of subchapter I of the Comprehensive Drug Abuse Prevention and Control Act of 1970, to subchap-

ter II, is irrelevant because 21 U.S.C. § 903 appears in Part F, not Part E. One other court has addressed this issue. In *People v. Duncan*, 40 Cal.App.3d 940, 115 Cal.Rptr. 699 (1974), a California appellate court mistakenly concluded that 21 U.S.C. § 903 applied to the subchapter containing importation provisions. In addition, the California court's discussion of this issue was dicta. Only California, Nevada, and Arizona have statutes prohibiting the importation of controlled substances. Cal.Health & Safety Code, §§ 11352, 11360; Nev.Rev.Stat. § 453.321.

illegal drugs across their borders. Congress has recognized the overwhelming problem facing each state and the nation because of controlled substances entering the country illegally. To conclude that Congress intended to pre-empt state regulation is inconsistent with Congress's declaration that the purpose of the Comprehensive Drug Control Act is "to strengthen existing law enforcement authority...." 1970 U.S.Code Cong. & Admin.News at 4566. The legislative history of The Narcotic Control Act of 1956, one of the predecessors to the current act, stated that the states and local communities have a major responsibility for controlling narcotics and that enforcement personnel should be increased. 1956 U.S.Code Cong. & Admin. News 3300, 3301–02. In *Abbate v. United States*, 359 U.S. 187, 195, 79 S.Ct. 666, 671, 3 L.Ed.2d 729, 734 (1959), the Supreme Court stated that under our federal system, "the States ... have the principal responsibility for defining and prosecuting crimes." The history of drug regulation indicates congressional intent that the eradication of illegal drugs be shared by federal, state, and local governments. Drug regulation includes enactment of laws concerning the importation of drugs.

The federal government has prohibited the importation of certain controlled substances into the United States. That the State of Arizona has passed corresponding legislation in no way places additional burdens upon foreign commerce nor in any conceivable manner interferes with the federal scheme of regulation. In *Kelly, supra*, Chief Justice Hughes stated that despite a myriad of federal laws regulating vessels, the State of Washington could require that vessels operating within its territorial limits be safe and seaworthy. The Chief Justice stated that unsafe and unseaworthy vessels, like diseased persons, animals, and plants, were "not proper subjects of commerce ...," 302 U.S. at 14, 58 S.Ct. at 94, 82 L.Ed. at 13. So too, unlawful drugs are neither entitled to nor deserving of the protection of the commerce clause.

We hold that subchapter II of the Comprehensive Drug Control Act does not preempt the state of Arizona from regulating the illegal importation of controlled substances.

### Conflict Between A.R.S. § 13–3408(B) and 21 U.S.C. § 960(b)(3)

Dunn next argues that because Arizona law provides for a more severe sentence for importers than is provided for under federal law, an impermissible conflict exists. We find this argument unpersuasive. The federal government has prohibited the importation of cocaine and has provided for imprisonment as punishment for violation of that law. While it is true that probation is available under federal law while Arizona law provides only for imprisonment, Arizona law does not impermissibly burden or interfere with foreign commerce or federal regulation thereof. The importation of narcotics is prohibited conduct under either scheme. The fact that federal punishment may be less than state punishment does not preclude the state from punishing an offender under its laws. *Abbate v. United States, supra; Bartkus v. Illinois, supra*, 359 U.S. at 137, 79 S.Ct. at 685, 3 L.Ed.2d at 694–95 (1959).

### CONCLUSION

Arizona may exercise its police power to protect the health and welfare of its inhabitants. A.R.S. § 13–3408(A)(7) is not unconstitutional under the Commerce Clause of the United States Constitution.

We have searched the record for fundamental error and have found none. We affirm the conviction and sentence.

LIVERMORE, Judge, specially concurring.

While it is frequently said that congressional power over foreign commerce is plenary, that has never meant that all state power over articles arriving across an international boundary is lost. All agree on the facts of this case that the state may punish for the possession of the cocaine just imported from Mexico. That impact on international commerce has never prevented the exercise of state police power unless the exercise in some way conflicts

with an express congressional policy. If the state may prevent the importation of contraband by criminalizing its possession, I see no reason why it may not prevent its importation directly. To do so, rather than conflicting with congressional policy, in fact reinforces it.

HOWARD, Judge, dissenting.

I am unable to agree with the majority opinion in any respect. It has misconstrued the federal statutes and relied on authority that is not only irrelevant but is contrary to the position taken by the majority.

I start with the principle enunciated in *Board of Trustees v. United States*, 289 U.S. 48, 53 S.Ct. 509, 77 L.Ed. 1025 (1933), in which the Court described the power of the federal government over foreign commerce under U.S. Const. art. I, § 8, cl. 3, as follows:

> The words of the Constitution "comprehend every species of commercial intercourse between the United States and foreign nations. No sort of trade can be carried on between this country and any other, to which this power does not extend." [Citations omitted.] It is an essential attribute of the power that it is exclusive and plenary. As an exclusive power, its exercise may not be limited, qualified, or impeded to any extent by state action.

> \*　　\*　　\*　　\*　　\*　　\*

> The principle of duality in our system of government does not touch the authority of the Congress in the regulation of foreign commerce.

> \*　　\*　　\*　　\*　　\*　　\*

> The control of importation does not rest with the state but with the Congress.

Id. at 56–59, 53 S.Ct. at 509–510, 77 L.Ed. at 1028–29.[1]

Next, let us look to the nature of the regulation being attempted by Arizona. There can be no doubt that it is a direct regulation of foreign commerce when the state prohibits the importation of certain drugs. Where does Arizona get the power to directly regulate the importation of foreign goods? I believe that art. I, § 8, cl. 3 and Board of Trustees v. United States, supra, make it clear that the states have no reserved power under the tenth amendment to the United States Constitution to directly regulate foreign commerce. The word "direct," I believe, is of utmost importance in this case.

To begin, comment is necessary on the authority relied upon by the majority. It cites *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 90 S.Ct. 844, 25 L.Ed.2d 174 (1970) and *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 80 S.Ct. 813, 4 L.Ed.2d 852 (1960), for the proposition that "[s]tate regulation of *foreign* commerce is permissible if it is even handed, effectuates a legitimate public interest, and is not preempted by federal action." (Emphasis added.) These cases deal only with the regulation of interstate commerce and not with foreign commerce. More importantly, as demonstrated by the quote in the majority opinion from *Huron*, these cases stand for the proposition that the interstate commerce clause did not withdraw from the states the power to legislate with respect to local concerns even though such legislation may *indirectly* and *incidentally* affect interstate commerce and those persons engaged in it. The majority has failed to cite any authority for the proposition that the states have the power to *directly* regulate interstate or, in this case, foreign commerce.

While the commerce clause of the United States Constitution confers upon Congress the power to regulate interstate commerce and commerce with foreign nations, the Supreme Court has recognized differences in the scope of those powers. As the Court stated in *Japan Line, Ltd. v. County of Los Angeles*, 441 U.S. 434, 448–49 n. 13, 99 S.Ct. 1813, 1821–22 n. 13, 60 L.Ed.2d 336, 348 n. 13 (1979):

> the State of Arizona at the international border line where the cattle were being held in pens pending placement on board Southern Pacific cattle cars for shipment out of the state.

---

1. In *Williams v. Finley*, 71 Ariz. 27, 222 P.2d 997 (1950), our court relied on this case to hold that the Arizona statutes governing the inspection of livestock were not applicable to cattle entering

In *National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976), [overruled, *Garcia v. San Antonio Metropolitan Transit Authority*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985)] the Court noted that Congress' power to regulate interstate commerce may be restricted by considerations of federalism and state sovereignty. It has never been suggested that Congress' power to regulate foreign commerce could be so limited.

The Court concluded that "[f]oreign commerce is pre-eminently a matter of national concern" and citing prior decisions, reiterated "the need for uniformity in treating with other nations, ..." Id. at 448, 99 S.Ct. at 1821, 60 L.Ed.2d at 347-48. The need for uniformity is clear in this case, given the federal government's obligation to comply with international conventions on controlled substances and the federal act's recognition of that obligation. See 21 U.S.C. §§ 811 and 812.

Turning to the Comprehensive Drug Control Act, the majority's construction ignores the clear congressional intent. Importation of controlled substances into this country is prohibited under 21 U.S.C. § 952. This statute was enacted as part of Public Law 91-513, the Comprehensive Drug Abuse Prevention and Control Act of 1970. See Historical Note to 21 U.S.C. § 801. The bulk of the act is codified in Chapter 13 of Title 21, which in turn is divided into two subchapters. Subchapter I, entitled "Control and Enforcement," establishes five schedules of controlled substances and confers upon the attorney general the authority to add or delete substances from those schedules in accordance with procedures established by the statutes and consistent with United States' obligations under certain international conventions. 21 U.S.C. §§ 811 and 812. This subchapter also provides for registration of manufacturers, distributors and dispensers of controlled substances (21 U.S.C. §§ 821–830), prohibits the creation, manufacture and distribution and possession of controlled substances other than in accordance with the requirements of Subchapter I (21 U.S.C. §§ 841–852) and provides for the administration and enforcement of the provisions set forth in this subchapter (21 U.S.C. §§ 871–886). Finally, Subchapter I contains several general provisions pertaining to severability, savings and applicability of state law, which will be discussed below.

Subchapter II, entitled "Import and Export," regulates the importation and exportation of controlled substances and the manufacture and distribution of controlled substances on board vessels. 21 U.S.C. §§ 951–955a. This subchapter also creates registration requirements for importers and exporters of controlled substances, and establishes penalties for persons importing or exporting such substances other than in compliance with the requirements of the subchapter.

The general provisions of Subchapter I include 21 U.S.C. § 903, which provides:

No provision of *this subchapter* shall be construed as indicating an intent on the part of the Congress to occupy the field in which that provision operates, including criminal penalties, to the exclusion of any State law on the same subject matter which would otherwise be within the authority of the State, unless there is a positive conflict between that provision of this subchapter and that State law so that the two cannot consistently stand together.

(Emphasis added.) No similar provision is found in Subchapter II. I do not believe that this omission was inadvertent, nor that Congress misspoke in using the words "this subchapter" in § 903. The savings provision found in the immediately preceding § 902, and the severability provisions of § 901 both refer specifically to "this chapter." Moreover, while the administration and enforcement provisions of Subchapter I are expressly made applicable to Subchapter II by § 965, no other provision is made in Subchapter II for the carryover of the provisions of Subchapter I.

Why is the language of § 903 not in Subchapter II? Surely Congress knew how to include it if it wanted to. The federal act is not ambiguous. Congress has expressed its intent by the language of

§ 903 which by clear implication means that Congress did intend to occupy the field of regulating importation, a field which the states have never historically regulated and which the states have no power to regulate directly.

The Supreme Court has long recognized the "broad power of a State to regulate the narcotic drugs traffic within its borders...." *Robinson v. California,* 370 U.S. 660, 664, 82 S.Ct. 1417, 1419, 8 L.Ed.2d 758, 761 (1962). This recognition is the reason for § 903 of the act. However, neither the Supreme Court nor Congress has ever recognized the power of a state to regulate the importation of products from foreign countries. That is why Congress specifically limited the language of § 903 to Subchapter I. No similar provision was necessary in Subchapter II because preemption is implicit by virtue of the subject matter. The "express statement" or "clear statement" rule does not apply when a federal statute deals with an activity not historically regulated by the states. See *Texas v. United States,* 730 F.2d 339 (5th Cir.1984); see also *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

Assuming, arguendo, that the state does have jurisdiction, my final criticism is the majority's conclusion that no conflict exists between Arizona and federal law. The majority admits that Arizona law is harsher because probation is available under federal law but not under Arizona law. The cases relied upon by the majority to conclude that this is not a greater burden have nothing whatsoever to do with the issues in this case. The question is whether or not the Arizona statute conflicts with the federal statute. It does. Suppose the Arizona statute provided for a life sentence? Would the majority still contend that there is no conflict?

In summary, the thrust of the majority's argument is the necessity of the state to control the drug problem. It already has the tools to do this by charging the defendant with possession or transportation of the drug.

I would reverse the conviction and dismiss the indictment.