855 P.2d 442

**STATE of Arizona, Appellee,**

v.

**Bill Dean TURNER, Robert Eugene Lawson, and David Ailes, Appellants.**

**No. 1 CA–CR 92–0378.**

Court of Appeals of Arizona, Division 1, Department B.

June 29, 1993.

Donald L. Wood, Las Vegas, for appellants.

## OPINION

WEISBERG, Judge.

The issue raised in this appeal is whether Ariz.Rev.Stat.Ann. ("A.R.S.") section 5–331(C) violates either the Supremacy Clause or Commerce Clause of the United States Constitution. Because we conclude that it does not, we affirm the decision of the trial court.

## FACTUAL AND PROCEDURAL HISTORY

Bill Dean Turner, Robert Eugene Lawson, and David Ailes ("defendants"), ferryboat pilots employed by the Riverside Resort & Casino at Laughlin, Nevada, were separately cited for violations of A.R.S. section 5–331(C),[1] which requires that children twelve years of age or under wear life jackets whenever the watercraft is underway. On October 10, 1991, the Bullhead City Justice Court convicted defendants as charged, sentenced them to pay a fine of $560.00 for each count, and imposed one year summary probation on each defendant. On February 13, 1992, the Mohave County Superior Court affirmed the judgment and sentences imposed by the Justice Court. This appeal followed.

## ISSUES

Defendants contend that A.R.S. section 5–331(C) is unconstitutional because it violates both the Supremacy Clause[2] and Commerce Clause[3] of the United States Constitution. They claim that the state statute violates the Supremacy Clause in two respects. First, they argue that Con-

Grant Woods, Atty. Gen. by Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, and Kent E. Cattani, Asst. Atty. Gen., Phoenix, for appellee.

1. A.R.S. section 5–331(C) (1989) provides:
   Personal floatation devices
      A child twelve years of age or under on board a watercraft shall wear a United States coast guard approved ... personal floatation device whenever the watercraft is underway.

2. Article VI, cl. 2 of the U.S. Constitution provides, in part:
      This Constitution, and the laws of the United States which shall be made in Pursuance

thereof; and all Treaties made, or which shall be made, under the Authority of the United States shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby....

3. U.S. Constitution art. I, § 8(3) provides, in part:
      The Congress shall have power ... [t]o regulate commerce ... among several states....

gress has expressed a clear intent that the relevant federal statute preempt state law in this area. Second, they argue that the conflict between the federal law and the state law makes compliance with both physically impossible, to-wit: the Coast Guard regulations [4] promulgated pursuant to 46 U.S.C. § 3306 of the Federal Boat Safety Act ("Act") require only that the floatation devices for children be stowed on board when the watercraft is underway, while the state statute requires that the children actually wear the floatation devices at such times.[5] Regarding the Commerce Clause, defendants argue that the Arizona statute is unconstitutional because it imposes an unreasonable constraint and intolerable burden upon interstate commerce. For the following reasons, we nonetheless find that A.R.S. section 5–331(C) is constitutional.

## DISCUSSION

### Supremacy Clause

#### Preemption in General

When determining whether federal law has preempted state law in a given case, the presumption is that federal law generally does not intend to displace state law. *Maryland v. Louisiana*, 451 U.S. 725, 746, 101 S.Ct. 2114, 2128–29, 68 L.Ed.2d 576 (1981). Before preemption occurs, Congress must clearly manifest its intent to supersede the state's exercise of its traditional police powers. *State v. Dunn*, 166 Ariz. 506, 509, 803 P.2d 917, 920 (App.1990), *cert. denied*, — U.S. —, 112 S.Ct. 94, 116 L.Ed.2d 66 (1991); *Kelly v. Washington ex rel. Foss Co.*, 302 U.S. 1,

12, 58 S.Ct. 87, 93, 82 L.Ed. 3 (1937). Specifically, preemption will occur

[w]hen Congress, in enacting a federal statute, expresses a clear intent to preempt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress.

*Dunn*, 166 Ariz. at 509, 803 P.2d at 920 (quoting *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898, 90 L.Ed.2d 369 (1986)).

#### Congressional Intent

We do not find clear and manifest congressional intent to preempt state law in the area of boat safety. To the contrary, the Act authorized each state to regulate boat safety, in the absence of federal disapproval, according to the unique conditions or circumstances found within that state. 46 U.S.C. § 4306. Expressing congressional intent not to preempt the type of boat safety requirement imposed by Arizona law, the legislative history indicates that the Act "does not preempt state law or regulation directed at safe boat operation and use, which was felt to be appropriately within the purview of state or local concern." S.Rep. No. 248, 92d Cong., 1st Sess., *reprinted in* 1971 U.S.C.C.A.N. 1333, 1341. Clearly, Congress did not in-

---

**4.** U.S. Coast Guard Regulations, in pertinent parts, provide:

§ 180.25–5 Number required

(a) All vessels shall be provided with an approved adult type life preserver for each person carried. In addition, unless the service is such that children are never carried, there shall be provided a number of approved life preservers suitable for children equal to at least 10 percent of the total number of persons carried.

§ 180.25–10 Distribution and stowage

(a) Life preservers shall be distributed through the upper part of the vessel in pro-

tected places convenient to the persons on board.

(b) If practicable, life preserver containers shall be so designed as to allow the life preservers to float free.

(c) Life preservers for children, when provided, shall be stowed separately.

**5.** Effective September 30, 1992, A.R.S. section 5–331 was amended to remove this requirement from vessels operating under circumstances similar to those of the instant case.

tend to preempt the states from legislating within the area of boat safety.

### Administrative Interpretation

■ Along with the legislative history, we have long recognized that, when a statute is silent or ambiguous, we will give considerable weight to an administrative agency's construction of the statutory scheme which it is entrusted to administer. *City of Mesa v. Killingsworth*, 96 Ariz. 290, 296, 394 P.2d 410, 414 (1964) ("while administrative interpretation is not binding where long continued and in cases of ambiguity we will acquiesce therein"); *Long v. Dick*, 87 Ariz. 25, 29, 347 P.2d 581, 584 (1959) ("although the administrative interpretation is not binding upon us, in cases of serious doubt we will not adopt a different construction"); *Rust v. Sullivan*, 500 U.S. 173, ——, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991); *Young v. Community Nutrition Inst.*, 476 U.S. 974, 980, 106 S.Ct. 2360, 2364, 90 L.Ed.2d 959 (1986); *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). In this instance, the Act specifically reserves to the Secretary of Transportation the right to disapprove inconsistent state legislation when necessary "to insure that indiscriminate use of state authority does not seriously impinge on the basic need for uniformity." 46 U.S.C. § 4306. We therefore must consider the federal administrator's view of the preemption issue.

The United States Coast Guard has been delegated the responsibility to promulgate and administer the subject federal regulations pursuant to 46 U.S.C. § 2104. Its position regarding possible federal preemption of a state's power to regulate boat safety under the circumstances of this case was clearly expressed in a letter which is part of the record. In its letter dated July 26, 1989, the United States Coast Guard stated that "state laws which require the wearing of personal flotation devices (PFDs) by children are not preempted by federal law." Obviously, the United States Coast Guard believes that federal legislation in the area of boat safety has not preempted the state's power to similarly

legislate regarding the use of floatation devices by young children.

■ The legislative history of 46 U.S.C. § 4306, taken together with the statutory construction applied by the United States Coast Guard, supports the conclusion that the federal government has not preempted Arizona's power to regulate boat safety. *Beveridge v. Lewis*, 939 F.2d 859, 863 (9th Cir.1991); *Grand Canyon Dories, Inc. v. Idaho Outfitters and Guides Bd.*, 709 F.2d 1250, 1255 (9th Cir.1983). We therefore find that the Act does not preempt A.R.S. section 5–331(C).

### Conflict with Federal Regulations

■ Having concluded that the state boat safety regulations have not been preempted, we must now consider whether the requirements of A.R.S. section 5–331(C) conflict with the requirements of the federal regulations and thereby make it impossible to comply with both sets of requirements, or whether the state statute frustrates the federal objectives in any way. We conclude that the state statute neither conflicts with federal law nor frustrates the federal objectives.

Defendants' argument seems to be that they cannot comply with both the federal requirement that the children's life preservers be stowed separately on board and the Arizona requirement that all children under twelve years of age wear a personal floatation device whenever the watercraft is underway. Their interpretation strikes us as contrary to common sense. Carried to its logical extreme, their interpretation of the federal regulations would mean that life preservers must be stowed and not worn even during an emergency. Obviously, Congress never intended such a result.

Wearing a personal floatation device pursuant to the Arizona statute does not constitute an illegal act under the applicable federal regulations. The state requirement merely enhances the minimum standards established by the federal government. *See Hillsborough County, Fla. v. Automated Medical Lab. Inc.*, 471 U.S. 707, 721, 105 S.Ct. 2371, 2379, 85 L.Ed.2d 714

(1985) (the federal regulation stands as a minimum, and a state regulation that is more protective of navigation is not invalid); *Colorado Anti–Discrimination Comm'n v. Continental Air Lines*, 372 U.S. 714, 722, 83 S.Ct. 1022, 1026, 10 L.Ed.2d 84 (1963) ("To hold that a state statute identical in purpose with a federal statute is invalid under the Supremacy Clause, we must be able to conclude that the purpose of the federal statute would to some extent be frustrated by the state statute."); *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 442, 80 S.Ct. 813, 815, 4 L.Ed.2d 852 (1960) (federal law did not invalidate a state statute even though the state statute imposed stricter standards than the federal regulations); *Grand Canyon Dories*, 709 F.2d at 1255 (Coast Guard regulations did not preempt Idaho statute requiring extra safety equipment).

Compliance with the state statute enhances rather than frustrates the purposes of the federal legislation. We conclude, therefore, that A.R.S. section 5–331(C) does not violate the Supremacy Clause.

### Commerce Clause

■. Defendants also assert that A.R.S. section 5–331(C) violates the Commerce Clause of the United States Constitution. Because the transportation of passengers between Nevada and Arizona over the navigable waters of the Colorado River constitutes interstate commerce, and because Nevada requires only that children's personal floatation devices be stored rather than worn, defendants contend that the Arizona statute creates an interstate conflict which imposes unreasonable constraint and intolerable burden upon interstate commerce. Given that Nevada law is generally consistent with the federal regulations, they argue that this conflict between Nevada law and Arizona law is inconsistent with the purpose of the Commerce Clause, which is to prevent states from impeding federal uniformity in an area where federal uniformity is essential. We disagree.

It is well-settled that states may regulate interstate commerce if the state statute "is even-handed, effectuates a legitimate public interest, and is not pre-empted by federal action." *Dunn*, 166 Ariz. at 508, 803 P.2d at 919; *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142, 90 S.Ct. 844, 847, 25 L.Ed.2d 174 (1970). Moreover,

[w]here the [state statute's] ... effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to putative local benefits.... And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with lesser impact on interstate activities.

*Grand Canyon Dories*, 709 F.2d at 1256 (quoting *Pike*, 397 U.S. at 142, 90 S.Ct. at 847).

Once again, we are influenced by the interpretation of the United States Coast Guard, which has the duty to administer the subject federal regulations. *Killingsworth*, 96 Ariz. at 296, 394 P.2d at 414; *Long*, 87 Ariz. at 29, 347 P.2d at 584; *Rust*, 500 U.S. at ——, 111 S.Ct. at 1767; *Young*, 476 U.S. at 980, 106 S.Ct. at 2364; *Chevron U.S.A.*, 467 U.S. at 844, 104 S.Ct. at 2782. In its letter dated July 26, 1989, the United States Coast Guard expressed its opinion that the Arizona requirement that a child wear a personal floatation device "does not impede substantially the free flow of commerce from state to state."

In the present case, we find that A.R.S. section 5–331(C) applies in an evenhanded manner and effectuates the legitimate public purpose of promoting safety. Any impact which it may have on interstate commerce is only an incidental effect. We therefore conclude that it does not violate the Commerce Clause.

### CONCLUSION

Because A.R.S. section 5–331(C) does not violate either the Supremacy Clause or the Commerce Clause of the United States Con-

stitution, the superior court did not err in sustaining its constitutionality. Accordingly, we affirm the judgment and sentences imposed upon defendants.

JACOBSON, P.J., and GRANT, J., concur.